[Cite as *State v. Skeins*, 2018-Ohio-134.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-T-0018** |
| GILBERT EUGENE SKEINS, JR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2016 CR 00268

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor, and *Deena L. DeVico*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481-1092 (For Plaintiff-Appellee).

*Kenneth J. Lewis*, 1220 West 6th Street, Suite #502, Cleveland, OH 44113 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Gilbert Skeins, Jr., appeals his conviction for rape and gross sexual imposition involving a minor. We affirm.

{¶2} Skeins had one child with Joy Slusher and she was pregnant with their second child in February 2016. Skeins and Slusher resided with Slusher's mother and stepfather in Niles, Ohio. On February 14, 2016, Slusher went shopping with her

parents and they left Skeins home alone with the children, which included Slusher's child from another relationship, Slusher's child with Skeins, and Slusher's niece, A.K., who was visiting and had slept over the night before with her cousins. A.K. was five years old at the time.

{¶3} While the kids were watching a movie, Skeins told A.K. to go to the bathroom, which she did. Skeins followed her in and closed the door. He then made A.K. touch his penis with her hands and then cover her eyes while he stuck it in her mouth.

{¶4} Upon returning from the store, A.K. told her grandmother, Davalyne Paden, what Skeins did to her, and upon being confronted, Skeins denied the allegations. He testified at trial and claimed that A.K. was lying.

{¶5} Skeins was indicted in April of 2016 and charged with gross sexual imposition, a third-degree felony, and rape, a first-degree felony with two factual specifications, i.e., the victim was less than ten years old at the time of the offense and the victim was compelled to submit by force or the threat of force under R.C. 2971.03(B)(1)(b) and (c).

{¶6} The jury found Skeins guilty of rape in violation of R.C. 2907.02(A)(1) and gross sexual imposition in violation of R.C. 2907.05(A)(4) & (C)(2) and found the two factual specifications were proven. Skeins was sentenced to 60 months for the gross sexual imposition conviction and a mandatory 25 years to life for rape. The court ordered the sentences to run concurrently and ordered him to register as a Tier III sex offender.

{¶7} Skeins raises two assignments of error that challenge his convictions as not supported by sufficient evidence and his sentence as too harsh.

{¶8} Skeins' first assigned error asserts:

{¶9} "The evidence presented at trial was legally insufficient to support conviction of rape, gross sexual imposition and unlawful sexual conduct with a minor."

{¶10} Although presented as a challenge to the sufficiency of the evidence, Skein's first assignment of error raises manifest weight issues in light of his argument that the victim made up the allegations against him. Thus, we consider whether his convictions are supported by the manifest weight of the evidence, which necessarily encompasses his sufficiency claim as well. *State v. Boyd,* 6th Dist. Ottawa No. OT-06-034, 2008-Ohio-1229, ¶24; *State v. McGowan*, 7th Dist. Jefferson No. 14JE37, 2016-Ohio-48, ¶4.

{¶11} "'"[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed.1990) 1433. * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560." *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997).

{¶12} "In reviewing a record for sufficiency, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560." *State v. Were*, 118 Ohio St.3d 448, 2008 Ohio 2762, 890 N.E.2d 263, ¶132.

{¶13} "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*' (Emphasis added.) Black's, *supra,* at 1594.

{¶14} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a ' "thirteenth *** juror"' and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs [v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211.] See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721 ('The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The

4

discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')" *Thompkins*, at 387.

{¶15} If the trial court's judgment results from a jury trial, it can only be reversed on manifest weight grounds by a unanimous concurrence of all three judges on the appellate panel reviewing the case. *Id.* at 389. The fact that the evidence is susceptible to more than one interpretation does not render a conviction against the manifest weight of the evidence. *State v. Ramey*, 2d Dist. Clark No. 2014-CA-127, 2015-Ohio-5389, 55 N.E.3d 542, ¶50, *appeal not allowed*, 145 Ohio St.3d 1458, 2016-Ohio-2807. "Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses." *Id.* at ¶51.

{¶16} Skeins was convicted of rape in violation of R.C. 2907.02(A)(1)(b), which states:

{¶17} "No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

{¶18} "* * *

{¶19} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

{¶20} "'Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another.

5

Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

**{¶21}** Skeins was also convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4) & (C)(2). Subsection (A)(4) states,

**{¶22}** "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

**{¶23}** "* * *

**{¶24}** "(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."

**{¶25}** "'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

**{¶26}** The jury found the state proved both beyond a reasonable doubt. It also found the state proved the factual specifications: that the offense involved a victim under the age of ten and that he compelled her to comply via force or the threat of force.

**{¶27}** The victim, A.K., was the state's first witness. She was in first grade and six years old at the time of trial. She explained that Skeins was watching her and her cousins for the first time and they were watching a movie. Skeins told her to go into the bathroom, and she did. Skeins followed her in and closed the door. He made her cover her eyes and he put his penis in her mouth. He also told her not to tell anyone or he

would "whoop [her] ass." She also explained that he made her touch his penis with her hands. When she was asked what if felt like, she said "a pee pee."

{¶28} When A.K.'s grandparents and aunt returned from shopping, A.K. recalls telling her grandmother what Skeins did to her. She later told her father and her Aunt Joy as well. They took her to the police station and the hospital. She threw up in her dad's car on the way to the hospital.

{¶29} A.K. identified Skeins at trial and said she did not make this story up. She said she was telling the truth. Upon being asked about other allegations she allegedly made up about her cousin Patrick, she said, "No, that was Gilbert."

{¶30} A.K.'s grandma, Davalyne Paden, also testified. She recalls going grocery shopping with her daughter, Joy Slusher, and her husband on Valentine's Day 2016. They left Slusher's two children and A.K. alone with Skeins. Upon returning home, Paden recalls A.K. having a snack and complaining of a sore throat. A while later A.K. told her and showed her what Skeins did to her while they were gone.

{¶31} Paden also testified that Slusher and A.K.'s father had A.K. confront Skeins, who called her an "effing liar." And A.K. responded saying, "No, Gilbert, you're the liar." Paden took her to the police department, and an officer interviewed her and then told Paden to take A.K. to the hospital.

{¶32} Paden admits to having difficulties and arguments with Skeins for some time before this incident. She did not feel he cleaned up after himself and he did not maintain employment. When asked about a prior allegation by A.K., Paden testified that she had heard the allegation from Slusher, who heard it from Skeins, who heard it from A.K.

{¶33} A.K. likewise told a social worker, Courtney Hoaglin, at the hospital about the incident. Hoaglin testified at trial that A.K. told her Skeins put his penis in her mouth and that it made her sick and caused her to vomit. A.K. also detailed the incident to a hospital nurse, Carolyn Alvarico. Alvarico testified at trial as well.

{¶34} Mary Wojciak, an investigator with Trumbull County Children Services interviewed A.K. about two weeks after the offense. She testified and her interview with A.K. was played for the jury.

{¶35} In the interview, Wojciak asks A.K. to tell her what happened, and A.K. stated:

{¶36} "I've gotta tell you something. Gilbert called me in the bathroom, and then he went in with me, and he made me touch it with my hands and he made me go upstairs and close my eyes. And I did it. And I told him not [sic] do it in the bathroom and upstairs. I showed my dad. And he put his pee pee in my mouth. * * * He touched my hands in the bathroom * * * with his hands. He made me touch his pee pee. * * * It was big. It was circle [sic]."

{¶37} When Wojciak asked her to show what Skeins had her do to his pee pee, A.K. put her hands together and showed a back and forth motion. She said, "he made me squeeze it." She described it as feeling "squeezy" and "squishy."

{¶38} Wojciak recalls asking A.K.'s parents about the Patrick allegations, and they said that A.K. denied ever making them.

{¶39} A.K.'s Aunt Joy Slusher testified for the defense and stated she did not believe A.K.'s allegations were true because of A.K.'s prior allegations against Patrick. Slusher agreed, however, that she heard these other allegations from Skeins, not A.K.,

8

and that she never confronted Patrick about the allegations or went to the police out of concern that they were true.

{¶40} Slusher drove A.K. and her father to the hospital on the day of the offense and recalls A.K. throwing up on the way. She helped to retell the details to the hospital staff and did not mention A.K.'s prior allegation of sexual abuse by Patrick to them.

{¶41} Skeins testified and explained that about one month before A.K. made these allegations against him, she told him that her cousin Patrick had hurt her and that Patrick made her perform fellatio on him. He said when the family confronted A.K. with these allegations, she told them she was lying.

{¶42} Skeins further testified that on the day of the instant offenses, the kids were watching a movie and that he was bored, so he went into the bathroom to masturbate. He testified that A.K. walked in on him, he yelled at her, and then he stopped. He said the door does not lock. Skeins did not tell anyone about his masturbating because he was embarrassed. He did not tell the police that A.K. saw him masturbating. He denied touching her with his penis and ejaculating in front of her. Skeins likewise denied having any sexual contact with A.K.

{¶43} Upon reviewing the evidence in a light most favorable to the prosecution, we disagree with Skein's first assigned error. The victim testified that he forced her to perform fellatio on him and that about the same time he made her touch it with her hands. She was only five years old at the time.

{¶44} And as for the use or threat of force, A.K. testified that Skeins made her go upstairs and perform oral sex on him. Furthermore, the Ohio Supreme Court has held:

9

**{¶45}** "[I]t is nearly impossible to imagine the rape of a child without force involved. Clearly, a child cannot be found to have consented to rape. However, in order to prove the element of force necessary to sentence the defendant to life imprisonment, the statute requires that some amount of force must be proven beyond that force inherent in the crime itself. Yet "'[f]orce need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.'" * * * In fact, R.C. 2907.02(B) requires only that minimal force or threat of force be used in the commission of the rape." *State v. Dye*, 82 Ohio St.3d 323, 327-328, 1998-Ohio-234, 695 N.E.2d 763 (1998). (Citations omitted.)

**{¶46}** A.K.'s statements that Skeins "made" her squeeze his penis and "made" her go upstairs and then he put his penis in her mouth satisfy this minimal force requirement especially in light of her young age at the time and the fact that Skeins was acting as caregiver. Moreover, Skeins threatened her not to tell, which also establishes the presence of psychological force. *Id.*

**{¶47}** Accordingly, we do not find his convictions are against the manifest weight of the evidence. The jury believed A.K.'s testimony over Skein's. Thus, the state also presented sufficient evidence supporting the essential elements of each offense, and as such, his first assigned error lacks merit.

**{¶48}** Skeins' second assigned error asserts:

**{¶49}** "The trial court erred in sentencing the defendant too harshly."

**{¶50}** Skeins argues the trial court abused its discretion in its application of the recidivism and seriousness factors. The state, however, points out that the trial court

had no choice but to impose the term it did based on the jury's findings that the victim was less than ten years old at the time and that Skeins compelled her to submit by force or threat of force.  We agree.

**{¶51}**  Our standard of review is set forth in R.C. 2953.08(G)(2), which states in part:

**{¶52}**  "The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

**{¶53}**  "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

**{¶54}**  "(b) That the sentence is otherwise contrary to law."

**{¶55}**  Further, R.C. 2971.03(B)(1) states in part:

**{¶56}**  "[I]f a person is convicted of or pleads guilty to a violation of division (A)(1)(b) of section 2907.02 of the Revised Code committed on or after January 2, 2007, if division (A) of this section does not apply regarding the person, and if the court does not impose a sentence of life without parole when authorized pursuant to division (B) of section 2907.02 of the Revised Code, the court *shall* impose upon the person an indefinite prison term consisting of one of the following:

**{¶57}**  "* * *

**{¶58}**  "(b) If the victim was less than ten years of age, a minimum term of fifteen years and a maximum of life imprisonment.

11

{¶59} "(c) If the offender purposely compels the victim to submit by force or threat of force, * * * *a minimum term of twenty-five years* and a maximum of life imprisonment." (Emphasis added.)

{¶60} At the sentencing hearing, the trial court explained that Skeins was convicted of two offenses, gross sexual imposition and rape with two factual specifications. It ordered him to serve five years on count one, gross sexual imposition, to run concurrent with his sentence for rape, with a minimum term of 25 years to life.

{¶61} As the state points out, the court did not have discretion in fashioning Skeins' sentence for his rape conviction. In light of the jury's factual findings supporting the penalty enhancements, the trial court was required pursuant to the mandatory language in R.C. 2971.03(B)(1) to impose a minimum term of 25 years to life. *State v. Liso*, 12th Dist. Brown Nos. CA2013-11-013, CA2013-11-016, 2014-Ohio-3549, ¶11. Accordingly, we find no error since the trial court imposed the sentence required by law. Skeins' second assigned error is overruled.

{¶62} The trial court's decision is affirmed.


DIANE V. GRENDELL, J.,

COLLEEN MARY O'TOOLE, J.,

concur.

12