[Cite as *State v. Fulton* , 2019-Ohio-2509.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-P-0048** |
| ZACHARY A. FULTON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2018 CR 00343.

Judgment:  Affirmed in part, reversed in part, and remanded.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Theresa M. Scahill*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, Ohio 44266 (For Plaintiff-Appellee).

*Shubhra N. Agarwal*, 3732 Fischreek Road, #288, Stow, Ohio 44224 (For Defendant-Appellant).

THOMAS R. WRIGHT, P.J.

{¶1}  Appellant, Zachary Fulton, appeals his domestic violence conviction following a jury trial.  We affirm in part, reverse in part, and remand for resentencing.

{¶2}  Fulton was charged with possession of marijuana, obstructing official business, and domestic violence.  Following the close of evidence, the state dismissed the possession charge, and the court granted Fulton's motion for acquittal on obstructing

official business. Fulton was convicted of the remaining count, domestic violence in violation of R.C. 2919.25, a fourth-degree felony.

{¶3} He raises five assigned errors:

{¶4} "[1.] The trial court committed reversible error when it overruled Mr. Fulton's Crim.R. 29(A) motion for acquittal because the evidence was insufficient to support a conviction.

{¶5} "[2.] Mr. Fulton's conviction for domestic violence was against the manifest weight of the evidence.

{¶6} "[3.] The trial court committed reversible and plain error when it sentenced Mr. Fulton without properly giving him the notifications concerning post-release control.

{¶7} "[4.] The trial court committed reversible and plain error by ordering the defendant to pay an 'assessment and recoupment fee.'

{¶8} "[5.] The trial court committed reversible error in assessing a fine and an 'assessment and recoupment fee' without making a finding that he had the ability to pay those amounts."

{¶9} We collectively address Fulton's first and second assigned errors challenging the sufficiency of the evidence and claiming that his conviction is against the manifest weight of the evidence.

{¶10} Upon reviewing the denial of a motion for acquittal, we use the same standard of review used for sufficiency of the evidence claims. *State v. Wright*, 11th Dist. Portage No. 2000-P-0128, 2002-Ohio-1432, *2; *State v. Cassel*, 2d Dist. Montgomery No. 26708, 2016-Ohio-3479, 66 N.E.3d 318, ¶ 16. In reviewing a challenge to the sufficiency of the evidence, an appellate court views the evidence in a light most favorable to the

prosecution. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). Sufficiency is "a term of art meaning that legal standard which is applied to determine whether the case may go to the [finder of fact] or whether the evidence is legally sufficient to support the * * * verdict as a matter of law. * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶11} "In viewing a sufficiency of the evidence argument, the evidence and all rational inferences are evaluated in the light most favorable to the prosecution. *See State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). A conviction cannot be reversed on grounds of sufficiency unless the reviewing court determines that no rational juror could have found the elements of the offense proven beyond a reasonable doubt. *Id."* *State v. Carter*, 7th Dist. Mahoning No. 15 MA 0225, 2017-Ohio-7501, 96 N.E.3d 1046, ¶95, *appeal not allowed,* 151 Ohio St.3d 1515, 2018-Ohio-365, 90 N.E.3d 952.

{¶12} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. * * * Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*' (Emphasis added.) [Black's Law Dictionary (6 Ed.1990)]*,* at 1594.

3

**{¶13}** "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a '"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony. * * * See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ('The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')." *Thompkins*, 78 Ohio St.3d 380, at 387.

**{¶14}** "The trier of fact is free to believe all, part, or none of the testimony of any witness, and we defer to the trier of fact on evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. * * *." *State v. Miller*, 4th Dist. Hocking No. 18CA3, 2019-Ohio-92, ¶ 28.

**{¶15}** A finding that a conviction is not against the manifest weight of the evidence necessarily encompasses a sufficiency finding as well. *State v. Skeins*, 11th Dist. Trumbull No. 2017-T-0018, 2018-Ohio-134, ¶ 10, citing *State v. McGowan*, 7th Dist. Jefferson No. 14JE37, 2016-Ohio-48, ¶ 4.

**{¶16}** Here, Fulton was convicted of domestic violence in violation of R.C. 2919.25(A), which states: "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

4

**{¶17}** "Physical harm" includes "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). And the domestic violence statute includes "[t]he natural parent of any child of whom the offender is the other natural parent" in the definition of a "family or household member." R.C. 2919.25(F)(1)(b).

**{¶18}** Fulton argues that the state failed to demonstrate that he caused physical harm to the mother of his two children, Allyson Prunty. He instead claims the evidence shows that the two only had a verbal altercation and she harmed herself. He also contends that her injuries were not fresh or recently inflicted.

**{¶19}** Prunty testified that she and Fulton have been in an on-again, off-again relationship for more than 10 years and have two children together. Prunty confirmed that Fulton does not permanently reside in her apartment but stays with her from time to time.

**{¶20}** Before the incident, Fulton had been staying with Prunty for a few days. When she asked him to leave, he became angry and they began arguing. The argument escalated, and Prunty recalls Fulton hitting her in the face with his fist. He hit her near her right eye more than once, but she does not recall the exact number of times he hit her. Prunty was crying and afraid. She recalls having a cut above her eye and two black eyes. Her nose and face were swollen, and her knee was hurting. She went to a neighbor's and knocked on the door for help, but there was no answer. She did not call the police.

**{¶21}** On cross-examination, Prunty denied these injuries were self-inflicted. She also confirmed that she had previously broken her nose several times and admitted to

5

cutting herself in the past but had not done so in more than seven years. Prunty explained she was afraid of Fulton and feared what he will do to her for testifying against him. Fulton has a prior domestic violence conviction resulting from another time he hit her. She was reluctant to talk with the police, and she did not seek medical treatment for her injuries.

{¶22} Sean Canterbury, an individual doing construction work on the apartment below Prunty's unit heard the dispute above him. He heard yelling and stuff being thrown. He also described hearing slapping sounds and then heard a woman and child crying. Canterbury called the project manager, an ex-police officer, who called the police and reported the altercation.

{¶23} City of Kent Police Department Officer John Romanoski was dispatched to Prunty's apartment for a domestic disturbance. He had Officer Joshua Nelson go around the back of the unit in case someone fled. When Romanoski knocked on Prunty's door, a shoeless Fulton jumped out of a second-story window with Prunty's phone in hand.

{¶24} Romanoski explained that Fulton denied any physical altercation. Fulton told Romanoski that Prunty's injuries were self-inflicted, and he claimed that he jumped from the window to go jogging.

{¶25} Officer Nelson, who apprehended Fulton after he jumped from the window, also interviewed Prunty at the scene, and Nelson recalls that her "face was swollen from her nose up to her forehead, and her eyes were starting to turn black and blue." She was very timid and did not want to talk. The state introduced a photo of Prunty confirming Nelson's description of her injuries.

{¶26} Based on the foregoing, the evidence is more than sufficient to show that Fulton knowingly caused physical harm to Prunty, the mother of his two children, when

6

he repeatedly punched her in the face. Moreover, the jury evidently believed Prunty's testimony over Fulton's. This is not an exceptional case in which the jury clearly lost its way and created a manifest miscarriage of justice. Accordingly, Fulton's first and second assigned errors lack merit.

{¶27} Fulton's third assignment contends error based on the trial court's alleged failure to provide the requisite post-release control notifications both at his sentencing hearing and in its sentencing entry.

{¶28} "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, applying R.C. 2953.08(G)(2). Because a trial court has a statutory duty to provide notice of post-release control at the sentencing hearing, any sentence imposed without proper notification is contrary to law. *State v. Grimes,* 151 Ohio St.3d 19, 2017-Ohio-2927, 85 N.E.3d 700, ¶ 8.

{¶29} A valid and statutory-compliant imposition of post-release control requires the sentencing court to advise the defendant of three things at the sentencing hearing and in its sentencing entry: "(1) whether postrelease control is discretionary or mandatory, (2) the duration of the postrelease-control period, and (3) a statement to the effect that the Adult Parole Authority ('APA') will administer the postrelease control pursuant to R.C. 2967.28 and that any violation by the offender of the conditions of postrelease control will subject the offender to the consequences set forth in that statute." *Grimes, supra*, at ¶ 1.

**{¶30}** A sentence imposed without the requisite post-release control notifications at hearing is not entirely void requiring de novo sentencing. *State v. Sanders*, 11th Dist. Portage No. 2011-P-0088, 2012-Ohio-5025, ¶ 10-12, citing *State v. Fischer,* 128 Ohio St.3d 92, 2010-Ohio-6238. Instead, when a court fails to impose statutorily mandated post-release control notifications, only that part of the sentence is void, and the proper remedy is to hold a new sentencing hearing for the limited purpose of proper notification. *Id. Accord State v. Cottrell,* 8th Dist. Cuyahoga No. 99142, 2013-Ohio-2912, ¶ 3; *State v. Hall,* 11th Dist. Ashtabula No. 2016-A-0069, 2017-Ohio-4376, 93 N.E.3d 35, ¶ 21, *appeal not allowed,* 151 Ohio St.3d 1428, 2017-Ohio-8371, 84 N.E.3d 1065.

**{¶31}** If properly notified, and any of the foregoing is absent from the entry, a court can correct the error by issuing a nunc pro tunc entry ""as long as the correction is accomplished prior to the defendant's completion of his prison term."" *State v. Qualls,* 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718, ¶ 24.

**{¶32}** Here, Fulton claims the court failed to notify him at the hearing and in its entry that if he committed a new felony while on post-release control, the court sentencing on the new felony could terminate his post-release control for the instant offense, sentence him to twelve months in prison or his remaining prison term for this offense, and make the prison terms consecutive. His arguments are based on R.C. 2929.141(A)(1) and (2). He does not dispute that he was provided the other requisite post-release notifications, and as such, we do not discuss them.

**{¶33}** Thus, Fulton contends a new sentencing hearing is required.

**{¶34}** Contrary to Fulton's argument, however, a sentencing court is *not* required to notify a defendant about penalty provisions that apply only when an offender is

convicted of committing a new felony while on post-release control. *State v. Gordon*, 153 Ohio St.3d 601, 2018-Ohio-1975, 109 N.E.3d 1201, ¶ 2. The Supreme Court in *Gordon* concluded:

{¶35} "R.C. 2929.19(B)(2)(e) sets forth one of the notification duties that trial courts have at sentencing hearings. R.C. 2929.19(B)(2)(e) unambiguously requires that the court notify the offender that if the offender violates postrelease control, the parole board may impose a prison term of up to one-half of the stated prison term originally imposed upon the offender. *R.C. 2929.19(B)(2)(e) does not impose any other notification requirements on trial courts.*

{¶36} "Applying the plain language of the unambiguous statute, R.C. 2929.19(B)(2)(e) does not require that the trial court inform the offender of the penalty provisions contained in R.C. 2929.141(A)(1) and (2) (provisions that apply only when an offender is convicted of committing a new felony while serving a period of postrelease control)." (Emphasis added.) *Id.* at 11-12.

{¶37} Consequently, because Fulton's post-release control notification arguments are based on R.C. 2929.141 and this provision does not set forth notification requirements, his arguments lack merit. *Id.*; *State v. Peace*, 11th Dist. Portage No. 2017-P-0037, 2018-Ohio-3742, ¶ 43-45. Fulton's third assigned error is overruled.

{¶38} Fulton's fourth assignment challenges the trial court's authority to order him to pay an "assessment recoupment fee." He argues the court lacks the authority to impose such a fee. Because the trial court's intent and authority are unclear regarding this fee, we reverse and remand.

9

**{¶39}** We review the imposition of costs and financial sanctions under R.C. 2953.08(A)(4) and (G)(2)(b). *State v. Collins*, 2015-Ohio-3710, 41 N.E.3d 899, ¶ 32 (12th Dist.). An appellate court may not modify a financial sanction imposed unless it finds by clear and convincing evidence that the sanction is not supported by the record or is contrary to law. *State v. Teal*, 6th Dist. Lucas No. L-15-1280, 2017-Ohio-7202, 95 N.E.3d 1095, ¶ 36, *appeal not allowed,* 151 Ohio St.3d 1477, 2017-Ohio-9111, 87 N.E.3d 1273.

**{¶40}** As alleged, the trial court ordered Fulton to pay an "assessment recoupment fee" at the hearing, stating:

**{¶41}** "You will be assessed a fine of $300.00 and court costs, as well as any assessment recoupment fee. I'm going to allow him four years to pay.

**{¶42}** "If you cannot pay, I will allow you to do community work service through the adult probation department of up to 40 hours a week at $10.00 per hour until paid in full.

**{¶43}** "Your court costs are currently $310.00, so to work this off you have to do 61 hours of community work service hours through the adult probation department."

**{¶44}** In its sentencing entry the court likewise states that it is ordering Fulton to pay "the indigent assessment and recoupment fee." It does not reference or explain the basis for this fee at the hearing or in its entry.

**{¶45}** Thus, as Fulton argues, it is unclear what the court was ordering him to pay when it stated that he was to pay "an assessment recoupment fee." And although not included at the sentencing hearing or in its entry, a notation on the transcript of the docket states the "indigent defense recoupment fee (common pleas)" assessed against Fulton is $75.

10

**{¶46}** The state counters and surmises that the court's imposition of this "assessment recoupment fee" is an order directing Fulton to repay court-appointed attorney fees under R.C. 2941.51(D). However, the court makes no reference to this section in the entry or at sentencing, and because the court's authority is unclear, we reverse and remand for further proceedings.

**{¶47}** R.C. 2941.51, *person represented shall pay for part of costs if able*, states in part:

**{¶48}** "(A) Counsel appointed to a case or selected by an indigent person under division (E) of section 120.16 or division (E) of section 120.26 of the Revised Code, or otherwise appointed by the court, * * * *shall be paid for their services by the county* * * *.

**{¶49}** "* * *

**{¶50}** "(D) The fees and expenses approved by the court under this section *shall not be taxed as part of the costs and shall be paid by the county*. However, if the person represented has, or reasonably may be expected to have, the means to meet some part of the cost of the services rendered to the person, the person shall pay the county an amount that the person reasonably can be expected to pay. Pursuant to section 120.04 of the Revised Code, the county shall pay to the state public defender a percentage of the payment received from the person in an amount proportionate to the percentage of the costs of the person's case that were paid to the county by the state public defender pursuant to this section. The money paid to the state public defender shall be credited to the client payment fund created pursuant to division (B)(5) of section 120.04 of the Revised Code." (Emphasis added).

**{¶51}** And R.C. 120.04(B)(5), which is referenced in R.C. 2941.51(D), states in part that it is the public defender's duty to "[c]ollect all moneys due the state for reimbursement for legal services * * * under section 2941.51 of the Revised Code and institute any actions in court on behalf of the state for the collection of such sums that the state public defender considers advisable."

**{¶52}** When statutory language is unambiguous and definite, we apply it as written. *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶8. A plain reading of R.C. 2941.51(D) confirms that it explicitly *precludes* these fees and expenses from being taxed as costs in criminal proceedings. Further, R.C. 120.04(B)(5) confirms that the collection of any attorney fees under R.C. 2941.51(D) must be separately pursued by the public defender via the civil collection process. *State v. Lambert,* 2d Dist. Clark No. 2015-CA-5, 2015-Ohio-5168, ¶19, citing *State v. Springs,* 2d Dist. Champaign No. 2015 CA 3, 2015-Ohio-5016; *accord State v. Breneman,* 2d Dist. Champaign No. 2013 CA 15, 2014-Ohio-1102, ¶5; *State v. Louden,* 2d Dist. Champaign Nos. 2013 CA 30, 2013 CA 31, 2014-Ohio-3059, ¶28.

**{¶53}** R.C. 2941.51(D) states that a defendant shall pay the county an amount that the offender reasonably can be expected to pay, but it does not authorize the collection of the same via the criminal proceedings. "Rather, the court must enter a separate civil judgment for the fees or part thereof that the court finds the defendant has the ability to pay." *State v. Crenshaw,* 145 Ohio App.3d 86, 90, 761 N.E.2d 1121 (8th Dist.2001), citing *State v. Trembly*, 137 Ohio App.3d 134, 144, 738 N.E.2d 93 (2000). "'The court may not imprison the defendant in order to compel him to pay the civil

judgment * * *.'"  *State v. Cole*, 6th Dist. Lucas No. L-03-1162, 2005-Ohio-408, ¶ 28, quoting *State v. Brown*, 6th Dist. Lucas No. L-97-1332, 7-8 (Nov. 19, 1999).

**{¶54}** Thus, the sentencing court can determine a defendant's ability to pay under R.C. 2941.51(D) and may conclude that a defendant has or may be expected to have the means to pay all or some of the legal costs of defense in the criminal proceedings, but it *cannot* assess attorney fees against a defendant as part of the state's costs of prosecuting the case.  *City of Galion v. Martin,* 3rd Dist. Crawford No. 3-91-6, 1991 WL 261835, *5; *accord State v. Crenshaw,* 145 Ohio App.3d 86, 90, 761 N.E.2d 1121, 1124 (8th Dist.2001).  After determining that the defendant has or may be expected to have the means to pay all or some of the legal costs of defense, the trial court must enter judgment against the defendant for a specified amount, and thereafter, the public defender, in its discretion, may enforce that judgment via civil collection proceedings.  *State v. Springs*, 2nd Dist. Champaign No. 2015-CA-3, 2015-Ohio-5016, 53 N.E.3d 804, ¶ 10.

**{¶55}** Thus, to the extent the trial court employed R.C. 2941.51(D) to recover indigent attorney fees *as costs* in this criminal proceeding, a plain reading of R.C. 2941.51 does not authorize this action and the same is contrary to law.  However, in light of the court's explanation that Fulton may perform community work service hours at $10 per hour to pay off $610, consisting of the $300 fine and $310 court costs, it appears the court was not taxing the indigent recoupment fee as court costs, or it likely would have included this amount in its calculation.  Thus, to the extent it determined that Fulton was able pay some of the cost of his defense under R.C. 2941.51(D), the court's decision was permissible if collection is to occur via civil collection proceedings.  And upon proceeding

13

in this fashion, the court must include in the judgment entry the authority for its action and the amount it finds Fulton responsible to repay, which it did not do here.

{¶56} Because it is unclear what the trial court's authority is for imposing the $75 recoupment assessment fee, we reverse and remand. On remand the trial court must identify the basis for the imposition of this fee and otherwise comply with R.C. 2941.51. Thus, Fulton's fourth assignment has merit.

{¶57} Fulton's fifth and final assigned error claims reversible error based on the court's assessment of a $300 fine and the $75 recoupment assessment fee without making a finding regarding his ability to pay. Fulton claims the court acted contrary to law by failing to make findings as to his ability to pay consistent with R.C. 2929.19(B)(5). The applicable statutes, however, do not require the trial court to make a finding as to Fulton's ability to pay.

{¶58} R.C. 2929.19(B)(5) states that "[b]efore imposing a financial sanction under section 2929.18 of the Revised Code or a fine under section 2929.32 of the Revised Code, the court *shall consider* the offender's present and future *ability* to pay the amount of the sanction or fine." (Emphasis added.) Thus, R.C. 2929.19(B)(5) only requires a court to consider an offender's ability to pay before imposing a fine, not to make a finding in this regard.

{¶59} The trial court likewise does not have to explicitly state that it considered the defendant's ability to pay a fine; its consideration may be inferred from the record. *State v. Taylor,* 11th Dist. Portage No. 2011-P-0090, 2012-Ohio-3890, 974 N.E.2d 175, ¶ 47, citing *State v. McNaughton,* 11th Dist. Lake No. 2011-L-083, 2012-Ohio-1271, 2012

14

WL 1029266, ¶ 30.  "[B]ut the record should contain some evidence that the trial court considered the offender's ability to pay."  *Id.*

**{¶60}**  Moreover, there is a split in authority as to whether an affirmative finding regarding the defendant's ability to pay is required under R.C. 2941.51(D) for recoupment of attorney fees.  Assuming the court was ordering Fulton to pay under R.C. 2941.51(D), several appellate courts, including this one in dicta, have concluded that the sentencing court must make "an affirmative determination on the record of [a defendant's] ability to pay or reasonable expectation thereof before" it can assess the cost of court-appointed counsel.  *State v. McGee*, 7th Dist. Jefferson No. 02-JE-39, 2003-Ohio-2239, ¶ 8; *State v. Talley,* 6th Dist. Lucas No. L-15-1187, 2016-Ohio-8010, 74 N.E.3d 868, ¶ 44; *State v. Clark*, 11th Dist. Ashtabula No. 2006-A-0004, 2007-Ohio-1780, ¶ 38[1] *rev'd on other grounds by State v. Clark,* 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462; *State v. Beach*, 9th Dist. Summit No. 26021, 2015-Ohio-3445, 41 N.E.3d 187, ¶ 53 (holding that a finding is required before a court may order a defendant to pay some or all court-appointed attorney fees).

**{¶61}**  However, the statute does not require such a finding, only consideration. Ohio courts have consistently held that a sentencing court is only required to make findings when the applicable statutes require findings.  For example, the failure to make the required findings to impose consecutive sentences in R.C. 2929.14(C)(4) at the sentencing hearing renders the sentence contrary to law.  *State v. Barajas-Anguiano,* 11th Dist. Geauga No. 2017-G-0112, 2018-Ohio-3440, ¶ 19, citing *State v. Bonnell,* 140

---

[1] This court in *Clark* cited a Sixth District Court of Appeals case for the proposition that a trial court is required to make a *finding* regarding an offender's ability to pay appointed counsel fees before assessing the costs of counsel. However, we then found that the fees before us were not those authorized under R.C. 2941.51(D).  *Id.* at ¶ 38.

Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659; *accord State v. Koeser,* 11th Dist. Portage No. 2013-P-0041, 2013-Ohio-5838, ¶ 24, *aff'd*, 140 Ohio St.3d 1409, 2014-Ohio-3785, 15 N.E.3d 879. And R.C. 2929.14(C)(4) states in pertinent part that a court "may require the offender to serve the prison terms consecutively if the court *finds* that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also *finds* * * * [one of three possible factors applies.]"  (Emphasis added.)

{¶62} However, when a statute states that a sentencing court "shall consider" something, that is all that is required. *See State v. Adams*, 37 Ohio St.3d 295, 525 N.E.2d 1361 (1988) (finding that a silent record raises the presumption that a trial court considered the sentencing factors); *State v. Cyrus*, 63 Ohio St.3d 164, 166, 586 N.E.2d 94 (1992) ("The burden is on the defendant to come forward with evidence to rebut the presumption that the trial court considered the sentencing criteria."); *State v. Johnson,* 11th Dist. Lake No. 2018-L-001, 2018-Ohio-3968, ¶ 19 (holding that the trial court's statement that it *considered* the purposes and principles of felony sentencing in R.C. 2929.11 in imposing sentence was sufficient to comply with the statute); *State v. Carter,* 11th Dist. Portage No. 2003-P-0007, 2004-Ohio-1181, ¶ 46 (finding that the trial court's obligation to consider the factors enumerated in R.C. 2929.12 can be derived from the sentencing transcript or the sentencing entry).

{¶63} Thus, a trial court is not required to find that an offender has the ability to pay before employing R.C. 2941.51(D) for recoupment of attorney fees, and we reject our statement to the contrary in *State v. Clark*, 11th Dist. Ashtabula No. 2006-A-0004, 2007-

16

Ohio-1780, ¶ 38. *Accord State v. Lane,* 12th Dist. Butler No. CA2002-03-069, 2003-Ohio-1246, ¶ 23 (holding in part the trial court's statement that it considered the PSI was sufficient to show that it considered whether the defendant has or reasonably may be expected to have the means to pay all or part of the costs of the legal services rendered).

{¶64} Here, the trial court does not indicate whether it considered any presentence investigation report. And there is likewise no PSI in the record. Notwithstanding, as showing his ability to pay, the state establishes Fulton as relatively young, 27 years old at the time of sentencing, and that he was sentenced to 18 months in prison. Thus, there was some information before the court for it to consider Fulton's future ability to pay the fine and fee totaling $375, consistent with R.C. 2929.19(B)(5) and R.C. 2941.51(D), respectively. In light of these facts and the relatively low amount of the fine and fees, the presumption that the trial court considered his ability to pay prevails, and Fulton fails to establish error. *See State v. Cyrus*, 63 Ohio St.3d 164, 166, 586 N.E.2d 94 (1992).

{¶65} Accordingly, his fifth assigned error lacks merit.

{¶66} The trial court's decision is affirmed in part, reversed in part, and remanded. On remand, the trial court must identify its authority for the imposition of the $75 indigent assessment and recoupment fee and how the same will be collected.

CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.

17