[Cite as *State v. Perkins*, 2019-Ohio-3993.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-P-0089** |
| MARK PERKINS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2018 CR 00483.

Judgment: Affirmed in part, reversed in part, and remanded.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Shubhra N. Agarwal*, 3732 Fishcreek Road, #288, Stow, OH 44224 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, Mark Perkins ("Mr. Perkins"), appeals the judgment of the Portage County Court of Common Pleas imposing sentence following his guilty plea to grand theft, a felony of the fourth degree. Mr. Perkins challenges the amount of restitution the trial court ordered him to pay, the trial court's failure to provide notifications regarding post-release control, and the trial court's imposition of an "assessment and recoupment fee."

{¶2} After a careful review of the record and pertinent law, we find: (1) the amount of restitution requested by the state is supported by competent, credible evidence; (2) the trial court was not required to provide Mr. Perkins with post-release control notifications; and (3) the trial court's consideration of the presentence investigation constituted an affirmative determination that it considered Mr. Perkins' ability to pay the costs of his defense under R.C. 2941.51(D); however, the trial court's authority for imposing an "assessment and recoupment fee" is unclear. The trial court's lack of clarity constitutes plain error.

{¶3} Thus, the judgment of the Portage County Court of Common Pleas is affirmed in part, reversed in part, and remanded. On remand, the trial court must identify its authority for the imposition of the assessment and recoupment fee. In the event the fee relates to the costs of Mr. Perkins' defense under R.C. 2941.51(D), the court must (1) determine the amount Mr. Perkins reasonably can be expected to pay pursuant to R.C. 2941.51(D), (2) enter judgment in favor of Portage County in that amount, and (3) indicate that pursuant to R.C. 120.04(B)(5) "the state public defender shall * * * [c]ollect all moneys due the state for reimbursement for legal services * * * under section 2941.51 of the Revised Code and institute any actions in court on behalf of the state for the collection of such sums that the state public defender considers advisable."

**Substantive and Procedural History**

{¶4} Mr. Perkins was an employee of Friendship Acres Campground in Atwater, Ohio. As part of his employment, he had access to a lottery machine. On several occasions, Mr. Perkins printed out lottery tickets without paying for them. Mr. Perkins also reclaimed some of the winning tickets at the campground.

{¶5} The campground noticed a discrepancy in its lottery accounts and contacted the sheriff's department and the lottery commission. The lottery commission examined the machines and determined that approximately $27,718 was missing. The tickets were printed out very early in the morning when Mr. Perkins was the only employee present. In addition, videotape verified Mr. Perkins' actions.

{¶6} The Portage County Grand Jury indicted Mr. Perkins for grand theft in violation of R.C. 2913.02, a felony of the fourth degree. The indictment alleged Mr. Perkins stole 310 lottery tickets valued at $27,718 over a period of time between December 11, 2016 and April 11, 2018.

{¶7} Mr. Perkins initially pleaded not guilty but subsequently entered a written plea of guilty to the offense. At the plea hearing, the trial court accepted Mr. Perkins' plea of guilty, found him guilty, referred the matter for a presentence investigation, and scheduled a restitution hearing.

{¶8} At a restitution hearing, Mark Chalmers, part owner and manager of the campground, testified as follows: Mr. Perkins worked at the campground for two periods of time, the last being until April of 2018; as part of Mr. Perkins' employment, he had access to a lottery machine; Mr. Chalmers noticed a discrepancy in his lottery accounts near the end of March or beginning of April in 2018; the lottery commission examined the machines and determined the approximate sum of $27,718 was missing; based on the time frames when Mr. Perkins was employed and the time frames when the money was taken, the missing sum of $27,718 was attributable to Mr. Perkins' actions; the campground did not have any collateral source of recovery or insurance to recover the amount Mr. Perkins stole; Mr. Chalmers was not certain who had access to the lottery

3

machines during every instance when tickets were taken; and the campground had videotapes confirming Mr. Perkins' actions.

{¶9} Defense counsel requested additional time to review the videotape and documents, and the court reset the restitution matter for a later date.

{¶10} The trial court then held a combined restitution and sentencing hearing. Mr. Perkins' trial counsel disputed the amount of restitution, asserting that many dates in the documents did not correspond with the dates in the indictment. The state responded that there was a much larger amount for which Mr. Perkins was not indicted, but it was only requesting restitution for the amount to which Mr. Chalmers testified.

{¶11} Mr. Perkins testified that some of the economic loss could be attributed to the malfunction of the lottery machine. However, he was unable to provide a contrary estimate of the campground's economic loss.

{¶12} Following Mr. Perkins' testimony, the trial court declared the restitution amount to be $27,718 and proceeded to sentencing.

{¶13} The trial court determined community control sanctions were consistent with the purposes and principles of sentencing. Thus, the trial court sentenced Mr. Perkins to 60 days in jail with work release, 12 months of intensive supervision, and 48 months of general supervision by the probation department with additional terms. The additional terms included restitution of $27,718 to be paid within 48 months, and imposed a $300 fine, an "indigent assessment and recoupment fee," and the costs of the proceedings, to be paid within 36 months.

{¶14} Mr. Perkins now appeals, raising the following three assignments of error:

4

**{¶15}** "[1.] The trial court committed reversible error by ordering Mr[.] Perkins to pay restitution for incidents occurring on dates not listed in the indictment in violation of R.C. 2929.18(A)(1).

**{¶16}** "[2.] The trial court committed reversible and plain error when it sentenced Mr. Perkins without properly giving him all the notifications concerning post-release control.

**{¶17}** "[3.] The trial court committed reversible and plain error by ordering Mr. Perkins to pay an "assessment and recoupment fee."

### Standard of Review

**{¶18}** Our review of a felony sentence is governed solely by R.C. 2953.08(G)(2), which provides that "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶1.

**{¶19}** Since Mr. Perkins did not object to the trial court's failure to provide post-release control notifications or its imposition of an "assessment and recoupment fee," our review of his second and third assignments of error "is limited to consideration of whether the trial court committed plain error." (Citation omitted.) *State v. Aikens*, 11th Dist. Trumbull No. 2014-T-0124, 2016-Ohio-2795, ¶53.

**{¶20}** Pursuant to Crim.R. 52(B) "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To show plain error, a defendant must demonstrate that "(1) there was an error, (2) the error was 'plain,' i.e., obvious, and (3) the error affected substantial rights." *State v. Tench*,

5

156 Ohio St.3d 85, 2018-Ohio-5205, ¶217, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

**Restitution**

**{¶21}** In his first assignment of error, Mr. Perkins argues that the trial court improperly ordered him to pay restitution for incidents occurring on dates not listed in the indictment.

**{¶22}** R.C. 2929.18(A)(1) permits the trial court to impose, as a financial sanction, restitution by the offender to the victim "in an amount based on the victim's economic loss." If the court imposes restitution, it may base the amount on "an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." *Id.* If the court decides to impose restitution, it shall hold a hearing if the offender, victim, or survivor disputes the amount. *Id.*

**{¶23}** "Economic loss" means "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense and includes * * * any property loss * * * incurred as a result of the commission of the offense." R.C. 2929.01(L).

**{¶24}** Restitution may be ordered only for those acts that constitute the crime for which the defendant was convicted and sentenced. *State v. Charles*, 11th Dist. Ashtabula No. 98-A-0044, 1999 WL 1313613, *4 (Dec. 30, 1999). Prior to imposing restitution, a trial court must ensure that the amount is supported by competent, credible evidence.

*State v. Albaugh*, 11th Dist. Portage No. 2013-P-0025, 2013-Ohio-5835, ¶10, citing *State v. Warner*, 55 Ohio St.3d 31, 69 (1990).

{¶25} Mr. Perkins claims that the trial court ordered restitution in the amount of $27,718 over Mr. Perkins' objection "for incidents occurring on dates not listed in the indictment." However, as Mr. Perkins accurately notes, "the documents and evidence supporting this claim were never introduced into evidence, and there was no evidence or mention of the amount of restitution that Mr. Perkins was conceding to be responsible for."

{¶26} Despite this lack of evidence, Mr. Perkins also claims "the State conceded that defense counsel was correct and that the restitution requested was a much larger [sic] than the incidents occurring on dates listed in the indictment."

{¶27} This is not an accurate characterization of the record. The transcript of the restitution hearing contains the following exchange between the state and the trial court:

{¶28} "[THE STATE]: The State is requesting that you order that he make full restitution for the amount that the victim testified to when he previously took the stand. There was a much larger amount that Defense Counsel is correct was not indicted, but the amount that was given from the stand, and I believe it was somewhere around $27,000.00, we would—

{¶29} "[THE TRIAL COURT]: $27,718.00. And he said there was more, but that's all he could prove.

{¶30} "[THE STATE]: We're asking for that amount."

7

{¶31} Thus, the state said that the total amount of the victim's economic loss, not the amount of restitution requested, was much larger than that for which Mr. Perkins was indicted.

{¶32} In addition, the amount of restitution requested by the state is supported by competent, credible evidence in the form of Mr. Chalmers' testimony. He testified as to the amount of missing money that was attributable to Mr. Perkins' actions, the evidence implicating Mr. Perkins, and that the missing money was not recoverable from any other sources. Although Mr. Chalmers stated he was not certain who had access to the lottery machines "at all times," a reasonable interpretation of his testimony is that he was referring to missing money that could not be attributed to Mr. Perkins' actions.

{¶33} The only evidence Mr. Perkins offered at the restitution hearing was his own brief testimony, and he was unable to establish a contrary amount of restitution. Therefore, Mr. Perkins has not provided clear and convincing evidence that the financial sanction is not supported by the record or is contrary to law.

{¶34} Mr. Perkins' first assignment of error is without merit.

**Post-Release Control**

{¶35} In his second assignment of error, Mr. Perkins argues that the trial court committed plain error by not providing him with all required notifications concerning post-release control.

{¶36} Mr. Perkins first contends that at the plea hearing, the trial court did not inform him of the consequences of committing a new felony while on post-release control as set forth in R.C. 2929.141. We previously addressed this argument in *State v. Chionchio*, 11th Dist. Portage No. 2012-P-0057, 2013-Ohio-4296, where we agreed with

the conclusions of numerous other appellate districts and held that a trial court is not required to inform a defendant at the plea hearing of the possibility that it could impose a prison term for committing a new felony while on post-release control. *Id.* at ¶32.

{¶37} Mr. Perkins next contends that the trial court failed to provide him with post-release control notifications during the sentencing hearing and in the sentencing entry.

{¶38} The post-release control statute does not apply when the trial court does not sentence an offender to a prison term. *State v. Tyler*, 9th Dist. Summit No. 29256, 2019-Ohio-2613, ¶6. The record demonstrates the trial court did not sentence Mr. Perkins to a prison term but rather 60 days in jail with work release.

{¶39} The trial court did notify Mr. Perkins, pursuant to R.C. 2929.19(B)(4), that if he violated the terms of his community control sanctions, he would serve a specific prison term of 18 months. This provision, however, does not require a court to inform a defendant placed on community control that the possible prison term may include post-release control. *See State v. Brown*, 8th Dist. Cuyahoga No. 77875, 2001 WL 280175, *3 (Mar. 22, 2001).

{¶40} Mr. Perkins' second assignment of error is without merit.

### Assessment and Recoupment Fee

{¶41} In his third assignment of error, Mr. Perkins argues that the trial court committed plain error by ordering him to pay an "assessment and recoupment fee."

{¶42} The record demonstrates that at the sentencing hearing, the trial court ordered Mr. Perkins to pay "any assessment recoupment fee" in addition to a $300 fine and the costs of the proceedings within 36 months. In its sentencing entry, the trial court likewise imposed "the indigent assessment and recoupment fee." The trial court did not

reference or explain the basis for this fee at the hearing or in its entry. The docket shows Mr. Perkins was assessed an "indigent defense recoupment fee (common pleas)" of $75.

### *Statutory Authority*

{¶43} Mr. Perkins argues that no statutory authority permits the trial court to impose such a fee. The state counters that the trial court's imposition of this fee is an order for Mr. Perkins to reimburse court-appointed attorney fees pursuant to R.C. 2941.51(D).

{¶44} We recently addressed this issue in *State v. Fulton*, 11th Dist. Portage No. 2018-P-0048, 2019-Ohio-2509. We noted that R.C. 2941.51 states in relevant part, as follows:

{¶45} "(A) Counsel appointed to a case or selected by an indigent person under division (E) of section 120.16 or division (E) of section 120.26 of the Revised Code, or otherwise appointed by the court, * * * *shall be paid for their services by the county* the compensation and expenses that the trial court approves.

{¶46} "* * *

{¶47} "(D) The fees and expenses approved by the court under this section *shall not be taxed as part of the costs and shall be paid by the county. However, if the person represented has, or reasonably may be expected to have, the means to meet some part of the cost of the services rendered to the person, the person shall pay the county an amount that the person reasonably can be expected to pay.* Pursuant to section 120.04 of the Revised Code, the county shall pay to the state public defender a percentage of the payment received from the person in an amount proportionate to the percentage of the costs of the person's case that were paid to the county by the state public defender

10

pursuant to this section. The money paid to the state public defender shall be credited to the client payment fund created pursuant to division (B)(5) of section 120.04 of the Revised Code." (Emphasis added.) R.C. 2941.51(A) & (D); *Fulton* at ¶47-50, citing.

**{¶48}** We further noted that R.C. 120.04(B)(5), which is referenced in R.C. 2941.51(D), states "the state public defender shall * * * [c]ollect all moneys due the state for reimbursement for legal services * * * under section 2941.51 of the Revised Code and institute any actions in court on behalf of the state for the collection of such sums that the state public defender considers advisable." R.C. 120.04(B)(5); *Fulton* at ¶51.

**{¶49}** Based on a plain reading of these statutes, we determined R.C. 2941.51(D) explicitly precludes the referenced fees and expenses from being taxed as costs in criminal proceedings. *Id.* at ¶52. The sentencing court may determine a defendant's ability to pay under R.C. 2941.51(D) and that a defendant has or may be expected to have the means to pay all or some of the legal costs of defense in the criminal proceedings, but it cannot assess attorney fees against a defendant as part of the state's costs of prosecuting the case. *Id.* at ¶53-54. Rather, the court shall enter a judgment for the fees or part thereof that the court finds the defendant has the ability to pay. (Citations omitted.) *Id.* Thereafter, the public defender shall enforce that judgment via civil collection proceedings. (Citation omitted.) *Id.* at ¶54.

**{¶50}** In this case, it appears the trial court imposed the assessment and recoupment fee separate from the costs of proceedings and the fine. However, it further appears that the trial court blended this fee into the payment schedule of 36 months, which can be construed as an element of enforcement. *See State v. Springs*, 2d Dist. Champaign No. 2015-CA-3, 2015-Ohio-5016, ¶12.

11

{¶51} Thus, to the extent the trial court determined Mr. Perkins was able pay some of the costs of his defense under R.C. 2941.51(D), the court was obligated to order Mr. Perkins to pay them and enter judgment accordingly. *See id.* at ¶11.[1] However, collection may only occur via civil collection proceedings. *See Fulton* at ¶55.

{¶52} Because the trial court's authority for imposing the assessment and recoupment fee is unclear, we find plain error and reverse and remand. On remand, the trial court must identify its authority for the imposition of the assessment and recoupment fee. In the event the fee relates to the costs of Mr. Perkins' defense under R.C. 2941.51(D), the court must (1) determine the amount Mr. Perkins reasonably can be expected to pay pursuant to R.C. 2941.51(D), (2) enter judgment in favor of Portage County in that amount, and (3) indicate that pursuant to R.C. 120.04(B)(5) "the state public defender shall * * * [c]ollect all moneys due the state for reimbursement for legal services * * * under section 2941.51 of the Revised Code and institute any actions in court on behalf of the state for the collection of such sums that the state public defender considers advisable."

### Ability to Pay

{¶53} Mr. Perkins also argues that if the fee relates to the costs of his defense under R.C. 2941.51(D), the trial court did not make a determination that he had the financial ability to pay them.

---

1. Ohio counties may adopt recoupment programs for court-appointed attorneys or public defenders, although it is unclear in this record whether Portage County has done so. *See* Office of the Ohio Public Defender County Indigent Fee/Cost Recoupment Programs, https://www.opd.ohio.gov/Portals/0/PDF/Reimbursement/rm_recoupment_no%20guidelines.pdf (accessed August 20, 2019).

**{¶54}** As indicated, R.C. 2941.51(D) provides "if the person represented has, or reasonably may be expected to have, the means to meet some part of the cost of the services rendered to the person, the person shall pay the county an amount that the person reasonably can be expected to pay." A trial court complies with R.C. 2941.51(D) when the record indicates that the court has considered a presentence investigation containing the defendant's financial and employment information. *State v. Christman*, 12th Dist. Preble Nos. CA2009-03-007 and CA2009-03-008, 2009-Ohio-6555, ¶39.

**{¶55}** In its sentencing entry, the trial court stated it had considered "the evidence presented by counsel, oral statements, any victim impact statement, the Pre-Sentence Report and the defendant's statement." The presentence report contains Mr. Perkins' age, educational history, employment history, and financial condition. Mr. Perkins' was 30 years old as the time of sentencing, and he rated his health as "good." There is no evidence in the record to indicate Mr. Perkins is not an able-bodied person capable of utilizing his work release to satisfy the relatively small fee. *See Chionchio*, *supra*, at ¶69.

**{¶56}** Accordingly, the trial court's statements reflect an affirmative determination on the record that it considered whether Mr. Perkins has or reasonably may be expected to have the means to pay all or part of the costs of the legal services rendered to him. *See State v. Lane*, 12th Dist. Butler No. CA2002-03-069, 2003-Ohio-1246, ¶23.

**{¶57}** Mr. Perkins' third assignment of error has merit in part.

**{¶58}** Based on the foregoing, the judgment of the Portage County Court of Common Pleas is affirmed in part, reversed in part, and remanded. On remand, the trial court must identify its authority for the imposition of the assessment and recoupment fee. In the event the fee relates to the costs of Mr. Perkins' defense under R.C. 2941.51(D),

the court must (1) determine the amount Mr. Perkins reasonably can be expected to pay pursuant to R.C. 2941.51(D), (2) enter judgment in favor of Portage County in that amount, and (3) indicate that pursuant to R.C. 120.04(B)(5) "the state public defender shall * * * [c]ollect all moneys due the state for reimbursement for legal services * * * under section 2941.51 of the Revised Code and institute any actions in court on behalf of the state for the collection of such sums that the state public defender considers advisable."

THOMAS R. WRIGHT, P.J.,

MATT LYNCH, J.,

concur.