[Cite as *State v. Thompson*, 2020-Ohio-67.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-P-0099** |
| MICHAEL THOMPSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2018 CR 00075.

Recommendation: Affirmed in part, reversed in part, and remanded.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Pamela J. Holder,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Edward F. Borkowski, Jr.,* P.O. Box 609151, Cleveland, OH 44109 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Michael Thompson, appeals his conviction of possession of cocaine, a felony of the fifth degree, following a jury trial in the Portage County Court of Common Pleas. Appellant argues (1) his conviction was against the manifest weight of the evidence; (2) the trial court improperly admitted other-acts testimony; (3) the trial court improperly admitted evidence that the state did not properly authenticate and for which it did not establish the chain of custody; (4) he received ineffective assistance of counsel;

(5) his sentence is contrary to law; and (6) the trial court erred by failing to provide him with post-release control notifications. We affirm in part, reverse in part, and remand the matter for a new trial.

{¶2} On June 20, 2017, Patrolman Scott Krieger ("Officer Krieger") of the Ravenna City Police Department was in the squad room of the police department when he received a call from Laura Taylor ("Ms. Taylor"), a records clerk at the department. Ms. Taylor informed him that appellant was there to pick up some police reports. Ms. Taylor had apparently read one of Officer Krieger's reports indicating that he wanted to speak with appellant about an assault for which he was a suspect.

{¶3} Ms. Taylor explained to Officer Krieger that appellant had gone out to his car but was due to come back to pick up the reports. Officer Krieger proceeded to the south entrance of the police department to meet appellant.

{¶4} The police department is located on the corner of Parkway and Spruce Street, and the records department entrance is on Spruce Street. One must ascend approximately ten outside steps to reach the entrance to the second floor. The building entrance contains two clear glass double doors.

{¶5} Officer Krieger was inside the building, on the second floor, looking out the double doors when he observed appellant coming up the outside steps. As appellant pulled a set of car keys from his left pants pocket, Officer Krieger saw a small, clear, plastic bag fall out of that pocket. The bag dropped to the landing outside the department where Officer Krieger met appellant.

{¶6} The plastic bag appeared to contain some white rocks, which Officer Krieger suspected was crack cocaine. Officer Krieger picked up the bag and informed appellant

2

that it had just fallen out of his pocket. Appellant denied the bag belonged to him and suggested he may have just kicked it. Officer Krieger reassured appellant that it had fallen out of his pocket.

{¶7} Officer Krieger attempted to discuss the report of the alleged assault, but appellant had difficulty communicating and continued to stare at the bag in Officer Krieger's hand. Appellant then indicated he was at the police department to obtain some reports with his name on them. Specifically, he wanted to obtain a report alleging that he had offered drugs to a juvenile. Officer Krieger held up the bag and stated, "It wasn't crack cocaine, was it?" Appellant put his head down and did not make any further statements.

{¶8} Officer Krieger did not arrest appellant but informed him that he intended to send the suspected crack cocaine to the laboratory for testing. The officer advised appellant that if the test results came back positive for a controlled substance, he would be charged at a later date.

{¶9} After the encounter, Officer Krieger returned to the squad room, and appellant entered the police department and presumably proceeded to the records department. Officer Krieger weighed the plastic bag and the suspected crack cocaine, placed it in an evidence bag, and sealed it. He put his initials across the seal. On the evidence bag, Officer Krieger listed an agency case number of 2171710029, the evidence tag number of 32577, the weight of 0.26 grams, appellant's name, the date, time, and location of recovery, and his name. He then submitted it to the police department's evidence room and filled out a Bureau of Criminal Investigation ("BCI") evidence submission form.

3

{¶10} On June 28, 2017, Detective Greg Francis ("Detective Francis") submitted the evidence bag to BCI for laboratory testing at its office in Richfield, Ohio. According to Detective Francis, the original agency case number listed on the BCI evidence submission sheet was 2171560011, which was incorrect, so he scratched out this "clerical error" and wrote the correct agency case number of 2171710029. According to Officer Krieger, case number 2171560011 related to the alleged assault in which Mr. Thompson was a suspect. Upon submission, BCI assigned its own unique laboratory number.

{¶11} Erin Miller ("Ms. Miller"), a BCI analyst, retrieved the evidence from BCI's evidence vault for laboratory testing. Ms. Miller first weighed the substance without the clear plastic bag, which was 0.17 grams. She then performed a color test, which indicated the possible presence of cocaine. Next, she performed a GC-MS analysis, where she determined the substance was cocaine.

{¶12} Ms. Miller submitted a written report containing her findings. She testified that the agency case number listed on her report, as submitted by the Ravenna police, was 217560011 (the alleged assault case). Finally, Ms. Miller placed the evidence bag within another bag and sealed it.

{¶13} The laboratory results were also emailed to Detective Francis. As he did with the BCI evidence submission form, Detective Francis crossed out the agency case number of 217560011 (the alleged assault case), wrote 2171710029 (the underlying case) next to it, and dated it. Detective Francis subsequently retrieved the evidence from BCI.

{¶14} The Portage County Grand Jury indicted appellant on one count of possession of cocaine, a felony of the fifth degree, in violation of R.C. 2925.11(A) and (C)(4)(a). Appellant pleaded not guilty.

{¶15} The matter proceeded to a jury trial. Mr. Thompson filed a motion in limine to exclude evidence of other criminal acts. Mr. Thompson's counsel also orally requested exclusion of evidence relating to the drug testing, asserting that it was performed under a different case number. The trial court granted the motion to exclude prior acts unless appellant testified. It deferred ruling on the motion with respect to the drug testing.

{¶16} The state presented testimony from three witnesses – Detective Francis, Officer Krieger, and Ms. Miller. The state also presented three exhibits – a sealed bag from BCI containing the Ravenna police's evidence bag (State's Exhibit 1), the BCI evidence submission form (State's Exhibit 2), and the BCI results sheet (State's Exhibit 3). Following Detective Francis' testimony, appellant's counsel renewed his motion to exclude the drug testing evidence. The trial court overruled the motion pending presentation of all of the evidence.

{¶17} Following the state's presentation of evidence, appellant's counsel objected to State's Exhibit 2 (the BCI evidence submission form) and State's Exhibit 3 (the BCI results sheet) on the basis that they had been altered. Appellant's counsel stated he did not object to the admission of State's Exhibit 1 (the sealed bag from BCI containing the Ravenna police's evidence bag). The trial court admitted State's Exhibits 2 and 3 to let the jury decide "what they're worth."

{¶18} The state rested, and appellant moved for acquittal, which the trial court denied. The defense rested without presenting any evidence. Appellant renewed his motion for acquittal, which the trial court again denied.

{¶19} The jury returned a verdict of guilty on the sole count in the indictment. The trial court issued a judgment entry memorializing the jury's guilty verdict and referring the matter to the adult probation department for a presentence investigation and report.

{¶20} At sentencing, the trial court found appellant was amenable to community control sanctions and sentenced him to 12 months of intensive supervision by the adult probation department followed by 36 months of general supervision, along with certain conditions. The trial court notified appellant that if he violated the terms of his community control sanctions, he may receive more restrictive community control sanctions or will serve a specific prison term of 12 months. The trial court subsequently issued a sentencing entry memorializing the conviction and sentence.

{¶21} Appellant now appeals, raising six assignments of error. We shall consider them out of order. His second assignment of error provides:

{¶22} "The court erred by permitting 'other acts' testimony."

{¶23} The Supreme Court of Ohio has instructed "[a]ppellate review of a trial court's decision regarding the admissibility of other crimes, wrongs, or acts under Evid.R. 404(B) is conducted under an abuse-of-discretion standard." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶1.

{¶24} Appellant's counsel filed a pretrial motion in limine to exclude other-acts evidence, which the trial court granted, but he did not object to the other-acts evidence at trial. When a party files a motion in limine regarding the exclusion of evidence but fails to

6

timely object at trial, the court reviews the admission of such evidence under a plain error analysis. *See State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, ¶133; *State v. Bowers*, 11th Dist. Trumbull No. 2016-T-0049, 2017-Ohio-2726, ¶15.

{¶25} The Supreme Court of Ohio has set forth very strict limitations on what constitutes plain error. *State v. Devai*, 11th Ashtabula Dist. No. 2012-A-0054, 2013-Ohio-5264, ¶17. To establish plain error, a defendant must show "(1) there was an error, (2) the error was 'plain,' i.e., obvious, and (3) the error affected substantial rights." *State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, ¶217, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶26} To affect "substantial rights," the error "must have affected the outcome of the trial." *Id.*, citing *Barnes* at 27. The defendant is therefore required to demonstrate a reasonable probability that the error resulted in prejudice. *Id.* "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶27} "Evidence that an accused committed a crime other than the one for which he or she is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character." (Citations omitted.) *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶15.

{¶28} Evid.R. 404(B) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive,

7

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B) affords the trial court discretion to admit evidence of other crimes, wrongs, or acts for "other purposes," including, but not limited to, those set forth in the rule. *Williams, supra,* at ¶17. Hence, the rule affords broad discretion to the trial judge regarding the admission of other-acts evidence. *Id.*

{¶29} The Supreme Court of Ohio has established the following three-step analysis regarding the admission of "other-acts" evidence: (1) whether it is relevant under Evid.R. 401, (2) whether it is presented for a permissible purpose, such as those stated in Evid.R. 404(B), rather than to prove the character of the accused in order to show activity in conformity therewith, and (3) whether its probative value is substantially outweighed by the danger of unfair prejudice under Evid.R. 403. *Williams, supra,* at ¶20.

{¶30} We shall treat appellant's alleged problematic other-acts evidence in turn.

{¶31} ***Defense counsel's reference to another case***

{¶32} First, appellant objects to a reference which occurred during defense counsel's cross-examination of Detective Francis about his scratching out a perceived "clerical error" on the BCI evidence submission form:

{¶33} "[DEFENSE COUNSEL]: I understand it might be clerical error, *but actually that is another case involving Mr. Thompson, isn't it*?"

{¶34} "[DETECTIVE FRANCIS]: That I don't know. I don't know what that case number correlates to." (Emphasis added.)

{¶35} It appears appellant is objecting to a reference contained in a question defense counsel posed to a witness, not the witness's testimony. Evid.R. 404(B) prohibits the admission of certain "evidence." A defense attorney's question is not proof that an

event occurred, and statements of counsel are not evidence. *State v. Eddy*, 8th Dist. Cuyahoga No. 104417, 2017-Ohio-741, ¶39. Therefore, defense counsel's question does not constitute "evidence" for purposes of Evid.R. 404(B).

{¶36} Even if the question constituted "evidence," it was not "evidence" of another "crime, wrong, or act" under Evid.R. 404(B). Not all evidence regarding a defendant's behavior constitutes other-acts evidence. *See, e.g., State v. Patton*, 74 Ohio App.3d 224, 229 (3d Dist.1991) (finding that testimony regarding the defendant's oral statements and comments did not constitute other-acts evidence); *State v. Heineman*, 8th Dist. Cuyahoga No. 103184, 2016-Ohio-3058, ¶74 (testimony regarding the defendant's demeanor or behavior did not constitute other-acts evidence). The definition of the word "act" includes "the process of doing something; action" and "[s]omething that is done or performed; deed." *Patton, supra,* at 229.

{¶37} Here, defense counsel's reference to "another case" did not reference appellant's commission of any crime, wrong, or act. In addition, Detective Francis' response did not implicate appellant in another crime, wrong, or act, since he testified that he did not even know what the other case number related to.

{¶38} The first of the prerequisites for plain error is the existence of an error. *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, ¶82. Even if the reference was inadmissible, appellant has not provided any authority that the trial court is required to sua sponte strike or provide a curative instruction regarding defense counsel's own question.

{¶39} And if there was any error, it was invited error and not subject to plain error analysis. The doctrine of invited error precludes a defendant from making an affirmative

and apparent strategic decision at trial and then complaining on appeal that the result of that decision constitutes reversible error. *State v. Doss*, 8th Dist. Cuyahoga No. 84433, 2005-Ohio-775, ¶7, quoting *United States v. Jernigan*, 341 F.3d 1273, 1290 (11th Cir.2003). Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995).

{¶40} Appellant's defense has consistently been that the suspected crack cocaine related to another case. Thus, permitting the jury to hear that appellant had another case with the Ravenna police could create doubt as to whether BCI tested the right evidence. As a result of defense counsel's strategy to focus on the change in the incident report numbers, it was inevitable that evidence about other incidents would be presented. *See, e.g., State v. Broadnax*, 2d Dist. Montgomery No. 18169, 2001 WL 127779, *3 (Feb. 16, 2001) (eliciting damaging testimony was the product of a tactical decision to show a witness's bias); *State v. Benitez*, 8th Dist. Cuyahoga No. 98930, 2013-Ohio-2334, ¶22 (invited error found where line of questioning was "an apparent strategic decision" to cast doubt on the alleged victim's claims); *State v. Jarrell*, 4th Dist. Gallia No. 15CA8, 2017-Ohio-520, ¶52, 54 (invited error found where defense counsel's eliciting of testimony regarding the defendant's breath test on cross-examination was part of a reasonable trial strategy to challenge the functionality of the breath test machine).

{¶41} Based on the foregoing, we find no reversible error with respect to defense counsel's reference to another case.

{¶42} ***Officer Krieger's reference to an alleged assault***

10

{¶43} Appellant next objects to Officer Krieger's reference to an alleged assault during defense counsel's cross-examination:

{¶44} "[DEFENSE COUNSEL]: Now, you've told the Jury twice that you were talking to him about another drug charge, but that wasn't the report he was there to get, right?

{¶45} "[OFFICER KRIEGER]: The reason that I wanted to speak with him?

{¶46} "[DEFENSE COUNSEL]: Yes.

{¶47} "[OFFICER KRIEGER]: Was – he was listed as a suspect in an assault, that's why I was there – or that's what I wanted to speak to him."

{¶48} We do not find error in the trial court's failure to intervene during Officer Krieger's testimony. A court does not have a per se duty to intervene when defense counsel elicits negative information from the state's witness. *See State v. Stragisher*, 7th Dist. Columbiana No. 03 CO 13, 2004-Ohio-6797, ¶17.

{¶49} In addition, Officer Krieger's reference does not tend to prove appellant's bad character and conformity therewith. Mr. Thompson's prior involvement in an alleged assault had no bearing on whether he later possessed drugs in front of the police department. *See State v. Jones*, 8th Dist. Cuyahoga No. 68929, 1996 WL 355292, *3 (June 27, 1996) (defendant's propensity to commit drug crimes, if any, had no bearing on whether he engaged in a non-drug related shooting). Rather, the reference provides background information explaining why the records clerk called Officer Krieger upon Mr. Thompson's arrival and why Officer Krieger came out to speak with him.

{¶50} Even if there was error, the error was invited. An error is invited if it was elicited by defense counsel on cross-examination. *State v. Hare*, 2d Dist. Clark No. 2017-

CA-4, 2018-Ohio-765, ¶45; *State v. Lenoir*, 2d Dist. Montgomery No. 22239, 2008-Ohio-1984, ¶24. *See also State v. Hartford*, 21 Ohio App.3d 29, 31 (8th Dist.1984) (objection to evidence of other crimes committed by a defendant waived where it is first brought out on cross-examination by defendant's attorney).

{¶51} Further, defense counsel's elicitation of this testimony appears to have been part of his trial strategy. In context, the testimony could permit the jury to infer that there was an evidentiary mix up with another case involving Mr. Thompson.

{¶52} Based on the foregoing, we find no reversible error with respect to Officer Krieger's reference to an alleged assault.

{¶53} ***Allegation of offering drugs to a juvenile***

{¶54} Appellant finally challenges to two portions of Officer Krieger's testimony during the state's direct examination where Officer Krieger recited appellant's own statement that he had heard there was a police report alleging he had offered drugs to a juvenile:

> {¶55} [THE STATE]: Okay. So as you're standing here having the conversation, tell us about that.
>
> {¶56} [OFFICER KRIEGER]: * * * So then the conversation changes to why he come [sic] to the police department. He indicated that he was there to get some reports with his names [sic] on them. Apparently, *he had heard*, or whatever, *that one of the reports was a report about him offering drugs to a juvenile*. He wanted that report. When he had mentioned that, I kind of held up the bag and I said, it wasn't crack cocaine, was it? And then he just kind of put his head down and didn't – didn't make anymore statements after that.
>
> {¶57} * * *
>
> {¶58} [THE STATE]: When you asked Mr. Thompson was this crack cocaine, and you said – I believe you said he just hung his head, or was – I'm sorry.

12

{¶59} [OFFICER KRIEGER]: *When he had told me that he was there to get reports or a report listing him as a possible suspect in offering drugs to a juvenile*, that's when I said, it wasn't crack cocaine, was it, as I held up the bag. (Emphasis added.)

{¶60} Appellant argues that permitting the jury to hear a police officer testify he was a suspect in another drug-related case, and one specifically involving a child, damaged his right to receive a fair trial. We agree.

{¶61} The state cannot augment evidence relevant to the question of criminal liability with additional testimony offered to support a theory that an accused is "a bad person - find him guilty." *See State v. Jones*, 8th Dist. Cuyahoga No. 88161, 2007-Ohio-1443, ¶25; *State v. Sexton*, 10th Dist. Franklin No. 01AP-398, 2002-Ohio-3617, ¶52. Offering drugs to a juvenile is an act, and appellant was not on trial for this act. During the state's case in chief, Officer Kreiger testified, on two separate occasions, that appellant was at the police station to obtain a police report, apparently filed by an unknown third party, that purportedly alleged appellant offered drugs to an unknown juvenile. During this exchange, the officer held up the bag of contraband that formed the basis of the charges in the instant case and rhetorically stated "it wasn't crack cocaine, was it?" Although defense counsel filed a motion in limine to keep other-acts evidence out (which the trial court granted), counsel did not object at trial to the testimony. The testimony, however, unfairly prejudiced appellant because it invited the jury to consider evidence of a separate drug-related allegation, completely disconnected from the underlying prosecution which, not coincidentally, is a drug-related charge.

{¶62} The state maintains the testimony the jury heard from Officer Krieger on re-cross was sufficient to render any error non-prejudicial, however. That testimony provides:

13

{¶63}  [DEFENSE COUNSEL]:  You talked about an investigation regarding a juvenile and drugs.  That's the one I'm asking you about.

{¶64}  [OFFICER KRIEGER]:  That was – that was Mr. Thompson's words was the reason why he was at the police department.  I don't know what report he was talking about when he was – when he was up there to get a report on this alleged incident of him selling or distributing drugs to – to juveniles.

{¶65}  [DEFENSE COUNSEL]:  But he had been accused and he wanted to see if there was a police report?

{¶66}  [OFFICER KRIEGER]:  That was his words, yes.

{¶67}  [DEFENSE COUNSEL]:  And to your knowledge, you don't know that there's ever been anything that came out of that accusation?

{¶68}  [OFFICER KREIGER]:  Right.

{¶69}  The state maintains the foregoing demonstrates there had been no formal accusation vis-à-vis the allegation to which the officer testified on direct.  We do not find this argument persuasive.

{¶70}  The officer's lack of knowledge about a formal accusation or his failure to specifically attest that appellant was suspected of or engaged in the act of offering drugs to a child is of no moment.  The officer, as an individual of ostensible probity who represents sanctioned authority, testified *twice* on direct that appellant was visiting the police station to obtain reports that listed him as a suspect offering drugs to a juvenile.  Even though the officer did not testify to the veracity of the contents in the alleged report, his testimony undoubtedly left an impression on the jury regarding appellant's criminal character and propensity for possessing drugs. And, even if the officer's testimony can be viewed as mere background evidence, there is no legitimate basis for him to freely vamp about why appellant was present at the police station on the day in question.  To whitewash this evidence as merely part of the gestalt would permit prosecutors to insert

propensity evidence whenever they wished, as long as it somehow, even loosely, fit their narrative of the case.

{¶71} Moreover, to forgive the officer's testimony as merely a narrative response regarding what appellant said or did would allow prosecutors to "coincidentally" elicit inadmissible evidence routinely, without regard to the rules of evidence or its impact on a defendant's right to a fair trial. And, in this case, the prosecutor's open-ended invitation to "tell us about" the conversation he had with appellant at the police station indicates the testimony was neither coincidental nor an unexpected narrative. And, in light of the motion in limine that sought to keep out all other-acts evidence, which was granted by the trial court, the prosecutor was on clear notice that his line of questioning would foreseeably lead to inadmissible testimony.

{¶72} The trial court *must* exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Evid.R. 403(A). Had an objection been made, the trial court unquestionably would have been required to sustain the objection, prevent any further reference to the circumstances surrounding appellant's visit to the police station, and provide a cautionary instruction. Under these circumstances, however, we are dubious that such an instruction would have been sufficient. Regardless, the court did not have the opportunity to do so. Thus, even though the officer's testimony was fundamentally inadmissible pursuant to Evid.R. 403(A), the trial court did not have the chance to engage in the weighing process.

{¶73} Nevertheless, "Evid.R. 404(B) and its companion statutory provision, R.C. 2945.59, are concerned with extrinsic acts." *State v. Nucklos*, 171 Ohio App.3d 38, 2007-Ohio-1025, ¶78 (2d Dist). "An extrinsic act is simply any act which is not part of the

15

operative facts or episode of the case; i.e., it is 'extrinsic' usually because of a separation of time, space, or both." Weissenberger's Ohio Evidence Treatise (2006), Section 402.21. "Generally, extrinsic acts may not be used to suggest that the accused has the propensity to act in a certain manner." *State v. Crotts,* 104 Ohio St.3d 432, 2004-Ohio-6550, ¶18. Both Evid.R. 404(B) and R.C. 2945.59 "preclude admission of other acts evidence to prove a character trait in order to demonstrate conduct in conformity with that trait," or "to show the accused's propensity or inclination to commit crime." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶15, 16.

{¶74} "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). "'[U]nfair prejudice" refers to the tendency of some proof to inflame the passions of the trier of fact, or to invite decision based upon a factor unrelated to the elements of the claims and defenses in the pending case." 29 Am. Jur.2d Evidence, Sec. 326. Introducing evidence of a defendant's previous "bad acts," or, in this case, alleged bad acts, planted the nefarious seed that appellant committed the bad act with which he was charged. "'Although * * * "propensity evidence" is relevant, the risk that a jury will convict for crimes other than those charged – or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment – creates a prejudicial effect that outweighs ordinary relevance.'" *Old Chief, supra*, at 181, quoting *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir. 1982). A court's management of the foregoing risks was described by the United States Supreme Court in *Michelson v. United States*, 335 U.S. 469:

16

{¶75} Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. Not that the law invests the defendant with a presumption of good character, *Greer v. United States*, 245 U.S. 559 [(1918)] * * *, but it simply closes the whole matter of character, disposition and reputation on the prosecution's case-in-chief. The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so over persuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice. (Footnotes omitted.) *Michelson*, *supra*, at 475-476.

{¶76} In this case, Officer Krieger's testimony relating to evidence of a purported allegation that appellant, in a separate situation, was offering drugs to a juvenile was not admissible as it provides an illegitimate basis for the inference that he had the propensity to commit the drug-crime charged. The state's open-ended question regarding what occurred at the police station was a solicitation of that testimony, especially in light of the trial court's pretrial ruling prohibiting any reference to other-acts evidence. As a result, the prosecutor's elicitation of the testimony was obvious error and that error affected the outcome of the trial**.** We consequently hold this matter must be reversed and the matter remanded for a new trial.

{¶77} To the extent discussed in the foregoing analysis, appellant's second assignment of error has merit.

{¶78} Appellant's fourth assignment of error provides:

{¶79} "Appellant's counsel was ineffective."

17

{¶80} To establish a claim of ineffective assistance of counsel, Mr. Thompson must demonstrate (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability, were it not for counsel's errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 669 (1984).

{¶81} Given our analysis of appellant's second assignment of error, counsel's failure to object to Officer Krieger's testimony regarding the third-party allegations was deficient performance; moreover, this deficiency, and the attendant failure to move for a mistrial, created the reasonable probability that, but for the omissions, the proceedings would have been different. We therefore hold counsel's performance on these points was ineffective.

{¶82} Notwithstanding this point, counsel filed a motion in limine to prevent any reference to other acts. Although counsel could have peremptorily objected to the prosecutor's question to "tell us about" the discussion he had with appellant at the station, we recognize the challenge of leveling such an anticipatory objection. To say the least, the window of time between the question and the answer is frequently rather narrow. And, once the officer gave his answer(s), objecting to the tainted testimony only draws more attention to its virulent implications. Such is one of the difficulties defense counsel faced in managing the situation created by the state – not an enviable position to find oneself, particularly where counsel previously moved to exclude any mention of other acts and, in light of the order granting the motion, could reasonably expect and rely upon the assumption that the state would follow the order by avoiding questions that might violate the same. While we legally conclude counsel's omissions rendered his assistance

18

ineffective within the limited context of the testimony at issue, we are mindful that this conclusion is precipitated by a problematic line of questioning on direct that should have been vigilantly avoided.

{¶83} Appellant's fourth assignment of error has merit.

{¶84} We shall next address appellant's third assignment of error. It provides:

{¶85} "The court erred by admitting evidence that was not properly authenticated and for which the chain of custody was not established."

{¶86} The record demonstrates defense counsel timely objected to the trial court's admission of State's Exhibits 2 and 3 pursuant to Evid.R. 103(A)(1) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and * * * [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context").

{¶87} The determination to admit or exclude evidence is within the sound discretion of the trial court and will not be reversed by an appellate court absent an abuse of discretion. *State v. Sledge,* 11th Dist. Trumbull No. 2001-T-0123, 2003-Ohio-4100, ¶20. An abuse of discretion is the trial court's "failure to exercise sound, reasonable, and legal decision-making." *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.2004).

{¶88} Defense counsel specifically did not object to the admission of State's Exhibit 1. The failure to object to the admission of evidence waives all but plain error. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶108. *See* Evid.R. 103(D) ("Nothing in this rule precludes taking notice of plain error affecting substantial rights although they

19

were not brought to the attention of the court"); Crim.R. 52(B) ("[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court").

{¶89} Evid.R. 901(A) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." One manner of authenticating evidence is to have a witness with knowledge testify that the document is what its proponent claims it to be. *See* Evid.R. 901(B)(1). This low threshold standard does not require conclusive proof of authenticity, but only sufficient foundational evidence for the trier of fact to conclude that the evidence is what its proponent claims it to be. (Citations omitted.) *State v. Miller*, 11th Dist. Trumbull No. 2014-T-0061, 2015-Ohio-956, ¶21.

{¶90} In this case, the testimony of the state's witnesses laid a proper foundation to connect the state's exhibits to the relevant facts of the case. *See Miller, supra,* at ¶21. Specifically, Officer Krieger testified that State's Exhibit 1 contained the evidence bag in which he placed the clear plastic bag holding the white rocks that appellant allegedly dropped while he was approaching the police department. Officer Krieger and Detective Francis both testified that State's Exhibit 2 was the BCI evidence submission form that corresponded to the evidence contained in State's Exhibit 1. Finally, Detective Francis and Ms. Miller both testified that State's Exhibit 3 contained the results of the BCI's testing of the substance.

{¶91} Appellant argues that because of Detective Francis' actions in changing the case numbers on State's Exhibits 2 and 3, there was a "serious question" as to whether State's Exhibit 1 actually contained the cocaine Officer Krieger took from appellant.

{¶92} Chain of custody is an evidentiary tool to establish identity of some item of personal property. *Hawkins v. Marion Corr. Inst.*, 62 Ohio App.3d 863, 871 (3d Dist.1990). It often becomes important in criminal drug cases to establish that the suspected substance submitted to a laboratory test is the identical substance found in the possession of a person charged with a drug offense. *Id.*

{¶93} Chain of custody is a part of the authentication and identification mandate set forth in Evid.R. 901 and the state has the burden of establishing the chain of custody of a specific piece of evidence. (Citations omitted.) *State v. Harold*, 11th Dist. Portage No. 2014-P-0012, 2015-Ohio-954, ¶37. The state's burden, however, is not absolute since the state need only establish that it is reasonably certain that substitution, alteration, or tampering did not occur. (Citation omitted.) *Id.* A chain of custody may be established by direct testimony or by inference. (Citation omitted.) *Id.* The trier of fact has the task of determining whether a break in the chain of custody exists. (Citation omitted.) *Id.* Any breaks in the chain of custody go to the weight of the evidence and not to the admissibility of the evidence. (Citations omitted.) *Id.*

{¶94} Appellant argues the state did not meet its burden as a result of Detective Francis' actions in scratching out the original case number and writing in another case number. While Detective Francis' explanation of his actions with respect to the BCI evidence submission form (State's Exhibit 2) and the BCI results sheet (State's Exhibit 3) was somewhat confusing, the record contains no evidence of a break in the chain of

21

custody with respect to the evidence Officer Krieger collected from Mr. Thompson (State's Exhibit 1).

{¶95} Mr. Thompson's third assignment of error is without merit.

{¶96} Appellant's remaining assignments of error provide:

{¶97} "[1.] Appellant's conviction was against the manifest weight of the evidence.

{¶98} "[5.] Appellant's sentence is contrary to law.

{¶99} "[6.] The court erred by not advising appellant about post-release control."

{¶100} Given our disposition of appellant's second and fourth assignments of error, we conclude his remaining assigned errors are overruled as moot.

{¶101} For the reasons discussed in this opinion, this court affirms in part, reverses in part, and remands the matter for a new trial.


TIMOTHY P. CANNON, J., concurs,

MARY JANE TRAPP, J., concurs in part and dissents in part with a Concurring/ Dissenting Opinion.

_____

MARY JANE TRAPP, J., concurs in part and dissents in part with a Concurring/ Dissenting Opinion.


{¶102} I concur in the majority's opinion's disposition of Mr. Thompson's third assignment of error regarding authentication and chain of custody. I also concur in the majority's disposition of that portion of Mr. Thompson's second assignment of error finding no reversible error with respect to defense counsel's reference to another case and Officer Krieger's reference to an alleged assault.

22

{¶103} I disagree, however, with the majority's disposition of Mr. Thompson's second assignment of error regarding Officer Krieger's references to Mr. Thompson offering drugs to a juvenile. I would find that defense counsel's actions reflected reasonable trial strategy to advance Mr. Thompson's defense, which means any error was invited error. Alternatively, given Officer Krieger's eyewitness testimony that he observed Mr. Thompson drop crack cocaine, Mr. Thompson has not affirmatively demonstrated plain error, i.e., that the results of the trial would have been different absent Officer Krieger's challenged statements. For the same reasons, I disagree with the majority's disposition of Mr. Thompson's fourth assignment of error regarding ineffective assistance of counsel.

{¶104} Finally, I would address Mr. Thompson's first (manifest weight of the evidence), fifth (legality of sentence), and sixth (post-release control notifications) assignments of error and find them to be without merit. Thus, I would affirm the judgment of the trial court.

**Other-Acts Testimony**

{¶105} Within his second assignment of error, Mr. Thompson challenges portions of Officer Krieger's testimony during the state's direct examination. On two occasions, Officer Krieger recited Mr. Thompson's own statement that he had heard there was a police report alleging he had offered drugs to a juvenile:

{¶106} "[THE STATE]: Okay. So as you're standing here having the conversation, tell us about that.

{¶107} "[OFFICER KRIEGER]: * * * So then the conversation changes to why he come [sic] to the police department. He indicated that he was there to get some reports

23

with his names [sic] on them.  Apparently, *he had heard*, or whatever, *that one of the reports was a report about him offering drugs to a juvenile*.  He wanted that report.  When he had mentioned that, I kind of held up the bag and I said, it wasn't crack cocaine, was it?  And then he just kind of put his head down and didn't – didn't make anymore statements after that.

{¶108} "* * *

{¶109} "[THE STATE]:  When you asked Mr. Thompson was this crack cocaine, and you said – I believe you said he just hung his head, or was – I'm sorry.

{¶110} "[OFFICER KRIEGER]:  *When he had told me that he was there to get reports or a report listing him as a possible suspect in offering drugs to a juvenile*, that's when I said, it wasn't crack cocaine, was it, as I held up the bag."  (Emphasis added.)

{¶111} Mr. Thompson argues that permitting the jury to hear a police officer say he was a suspect in another drug-related case, and one specifically involving a child, damaged his right to receive a fair trial.  Based on my review of the entire record, I do not agree with Mr. Thompson's characterization of this testimony, Mr. Thompson's assertion that the trial court committed reversible error by not addressing it sua sponte, or the testimony's alleged prejudicial effect.

### *Evid.R. 404(B)*

{¶112} As the majority correctly notes, the state cannot augment evidence relevant to the question of criminal liability with additional testimony offered to support a theory that an accused is "a bad person—find him guilty."  *See State v. Jones*, 8th Dist. Cuyahoga No. 88161, 2007-Ohio-1443, ¶25; *State v. Sexton*, 10th Dist. Franklin No.

01AP-398, 2002-Ohio-3617, ¶52. However, this is not a case where such an attempt took place.

{¶113} First, the state did not proffer evidence of the allegation for admission at trial. Evid.R. 404(B) requires proponents of evidence to be offered under the rule to comply with certain notice requirements. Officer Krieger's statements were part of a narrative response, not testimony elicited by the prosecutor's specific question. *See Sexton* at ¶52 (witness's volunteered statement was not other-acts evidence); *State v. Ellison*, 4th Dist. Highland No. 16CA16, 2017-Ohio-284, ¶30 (same).

{¶114} Contrary to the majority's assertion, there is no indication that the prosecutor knew Officer Krieger would volunteer the specific details of the purported police report Mr. Thompson sought to obtain when the prosecutor asked Officer Krieger about his conversation with Mr. Thompson. *See Ellison* at ¶30.

{¶115} Further, the prosecutor was not on clear notice regarding impermissibility of this testimony. Mr. Thompson's written pretrial motion in limine sought the general exclusion of evidence regarding unspecified "misconduct." His oral motion sought exclusion of evidence that Mr. Thompson "has been charged and acquitted or dismissed several times on other cases." There is no indication Mr. Thompson was charged for allegedly offering drugs to a juvenile. In fact, Officer Krieger testified that he had no knowledge of any such report. Plus, Mr. Thompson also asserted that the drug testing in the case "was done under a different case number," which makes other cases involving Mr. Thompson highly relevant. Therefore, the trial court's ruling prohibiting evidence of "other charges" did not clearly prohibit Officer Krieger's statements.

25

{¶116} Second, Officer Krieger's statements did not constitute "evidence" that Mr. Thompson committed another "crime, wrong or act" under Evid.R. 404(B). The definition of the word "act" includes "the process of doing something; action" and "[s]omething that is done or performed; deed." *See, e.g., State v. Patton*, 74 Ohio App.3d 224, 228 (3d Dist.1991). As the majority correctly notes, offering drugs to a juvenile is an "act." However, the majority also correctly notes that not all evidence regarding a defendant's behavior constitutes other-acts evidence. *See id.* at 229 (testimony regarding the defendant's oral statements and comments did not constitute other-acts evidence); *State v. Heineman*, 8th Dist. No. 103184, 2016-Ohio-3058, ¶74 (testimony regarding the defendant's demeanor or behavior did not constitute other-acts evidence).

{¶117} Officer Krieger did not testify that Mr. Thompson performed the act or even that he was suspected of performing the act. Rather, Officer Krieger's testimony consisted of recitations of Mr. Thompson's own statement regarding why he was present at the police department. Testimony regarding a defendant's own statements is not other-acts evidence. *See Patton* at 229.

{¶118} Instead of implicating Mr. Thompson in the commission of such an act, Officer Krieger's testimony on recross-examination, which Mr. Thompson does not reference on appeal, suggested Mr. Thompson *did not* perform such an act:

{¶119} "[DEFENSE COUNSEL]: You talked about an investigation regarding a juvenile and drugs. That's the one I'm asking you about.

{¶120} "[OFFICER KRIEGER]: That was – that was Mr. Thompson's words was the reason why he was at the police department. I don't know what report he was talking

26

about when he was – when he was up there to get a report on this alleged incident of him selling or distributing drugs to – to juveniles.

{¶121} "[DEFENSE COUNSEL]: But he had been accused and he wanted to see if there was a police report?

{¶122} "[OFFICER KRIEGER]: That was his words, yes.

{¶123} "[DEFENSE COUNSEL]: And to your knowledge, you don't know that there's ever been anything that came out of that accusation?

{¶124} "[OFFICER KREIGER]: Right."

{¶125} Third, I do not agree with Mr. Thompson's characterization of Officer Krieger's statements as tending to prove his bad character and conformity therewith. Obviously, other-acts evidence may create a danger of unfair prejudice, particularly when the alleged act is "very similar to the charged offense, or of an inflammatory nature." *See State v. Schaim*, 65 Ohio St.3d 51, 60 (1992). In context, Officer Krieger's statements constituted background evidence explaining why Mr. Thompson was present at the police station. *See Jones* at ¶25 (testimony was not other-acts evidence where it constituted background evidence and was not presented to prove character); *Sexton* at ¶52 (same). It would have been preferable for Officer Krieger not to have volunteered the details of the purported police report Mr. Thompson sought to obtain. However, defense counsel's recross-examination may have limited the danger of unfair prejudice.

### *Trial Court Error*

{¶126} The first, and most fundamental, of the prerequisites for plain error is the existence of an error. *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, ¶82. Even

27

assuming Officer Krieger's statements were inadmissible, Mr. Thompson has not demonstrated that the trial court committed an error.

{¶127} Mr. Thompson claims the trial court erred by permitting the testimony, particularly in light of granting his motion in limine, and by failing to give the jury a curative instruction. However, he cites no legal authority that requires a trial court to sua sponte take these actions.

{¶128} The majority asserts that Evid.R. 403(A) *requires* a trial court to exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice. However, the text of the rule merely states that certain evidence "is not admissible." It does not require the trial court to sua sponte to strike testimony or provide a curative instruction. In fact, Evid.R. 105 only permits the trial court to provide a limiting instruction "upon request of a party."

{¶129} According to the Supreme Court of Ohio, "[t]he law imposes upon every litigant the duty of vigilance in the trial of a case, and even where the trial court commits an error to his prejudice, he is required then and there to challenge the attention of the court to that error, by excepting thereto, and upon failure of the court to correct the same to cause his exceptions to be noted." *Lester v. Leuck*, 142 Ohio St. 91, 92 (1943), quoting *State v. Kollar*, 93 Ohio St. 89, 91 (1915). In addition, courts proceed with great reluctance in employing a plain error analysis in cases that would require the trial court to advocate on behalf of the defendant. *State v. Barnes*, 11th Dist. Portage No. 2012-P-0133, 2013-Ohio-2836, ¶41.

{¶130} Mr. Thompson did not object, move to strike, request a curative instruction, or move for a mistrial. While he moved to exclude evidence of "misconduct" and cases

28

where Mr. Thompson was "charged and acquitted or dismissed," he must object at trial to the admissibility of specific evidence to permit the trial court to address the issue. *See State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, ¶133; *State v. Bowers*, 11th Dist. Trumbull No. 2016-T-0049, 2017-Ohio-2726, ¶15. In order to avoid the alleged error in this case, the trial court would have had to advocate on Mr. Thompson's behalf.

{¶131} The majority acknowledges that the trial court did not have the opportunity to apply Evid.R. 403(A) because Mr. Thompson's defense counsel did not object, making the majority's conclusion that the trial court committed reversible error even more puzzling.

### *Invited Error*

{¶132} Even if the trial court erred by not intervening sua sponte, I would find that Mr. Thompson invited the error, and thus find it was not subject to plain error review. Based on my review of the record, defense counsel's failure to object was a strategic decision.

{¶133} As the majority correctly notes, the doctrine of invited error precludes a defendant from making an affirmative and apparent strategic decision at trial and then complaining on appeal that the result of that decision constitutes reversible error. *State v. Doss*, 8th Dist. Cuyahoga No. 84433, 2005-Ohio-775, ¶7, quoting *United States v. Jernigan*, 341 F.3d 1273, 1290 (11th Cir.2003). Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995).

{¶134} A trial counsel's failure to make objections is within the realm of trial tactics. *State v. Ray*, 3d Dist. Union No. 14-05-39, 2006-Ohio-5640, ¶63. As the Supreme Court of Ohio has explained, "any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state. (Citations omitted.) *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶139.

{¶135} Permitting the jury to hear Officer Krieger's testimony regarding another drug case involving Mr. Thompson advanced Mr. Thompson's defense by potentially creating doubt as to whether BCI tested the right evidence. Courts have found the failure to object to constitute trial strategy in similar situations. *See State v. Fuller,* 8th Dist. Cuyahoga Nos. 63987 & 63988, 1993 WL 437596, *9-10 (Oct. 28, 1993) (admission of other-acts testimony was not error where defense counsel's strategy of discrediting the alleged victim *required* evidence of defendant's other acts); *State v. Bedford*, 9th Dist. Summit Nos. 25048 & 25066, 2010-Ohio-3577, ¶31 (admission of other-acts testimony was not error where trial counsel's strategy was to allow the state to admit some evidence that reflected poorly on the defendant's behavior).

{¶136} Further, the Supreme Court of Ohio has recognized that a decision not to request a limiting instruction is sometimes a tactical one. *See Schaim*, *supra*, at 61, fn. 9; *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *7 (Dec. 23, 1994). It appears defense counsel chose to elicit further testimony from Officer Krieger to limit the danger of unfair prejudice to Mr. Thompson rather than requesting a limiting instruction. *See Sate v. Stober*, 3d Dist. Putnam No. 12-13-09, 2014-Ohio-1568, ¶120 (no error or invited error where defense counsel did not object to the other-act testimony

of several witnesses, cross-examined them consistent with and in furtherance of his trial strategy, and even minimized potential prejudice through his cross-examination); *State v. Hogue*, 4th Dist. Hocking No. 17CA6, 2018-Ohio-3887, ¶25 (invited error found where defense counsel did not object to the admission of and conducted extensive cross-examination regarding an incriminating report). Therefore, in my view, defense counsel's failure to request a limiting instruction was also arguably part of his trial strategy.

{¶137} The majority seems to acknowledge that defense counsel's failure to object was a tactical decision but does not explain why this did not constitute invited error. It also characterizes defense counsel's inaction as an attempt to avoid drawing further attention to the testimony. I disagree that the record shows such passivity on the part of defense counsel.

### *Plain Error*

{¶138} Even if the error was not invited, I would find Mr. Thompson has not established the existence of "plain error," i.e., a reasonable probability the outcome of the trial would have been different absent Officer Krieger's statements. *See State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, ¶217*,* citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶139} As the U.S. Supreme Court has long recognized, a defendant is entitled to a fair trial but not a perfect one. *Lutwak v. United States*, 344 U.S. 604, 619 (1953). *See also State v. Steele*, 138 Ohio St.3d 1, 2013-Ohio-2470, ¶29 ("it must be remembered that we are not looking for the ideal in this case. We are merely looking for the absence of plain error"). According to the Supreme Court of Ohio, a reviewing court should be conservative in its application of plain-error review, reserving notice of plain error for

31

situations involving more than merely theoretical prejudice. *Steele* at ¶30. Further, in determining whether plain error occurred, an appellate court must examine the alleged error in light of all evidence properly admitted at trial. *State v. Hill*, 92 Ohio St.3d 191, 203 (2001).

{¶140} Officer Krieger fully explained the context of his statements – he was reciting Mr. Thompson's own stated reasons for being at the police, and he had no knowledge regarding the allegation. Nothing suggests that the jury used the allegation and convicted Mr. Thompson for being a bad person. *See State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶136.

{¶141} Further, "a defendant's substantial rights cannot be prejudiced when the remaining evidence, standing alone, is so overwhelming that it constitutes defendant's guilt, and the outcome of the case would have been the same regardless of evidence admitted erroneously." *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, ¶110.

{¶142} Mr. Thompson was charged with possession of cocaine based on a police officer's alleged eyewitness testimony. *See State v. Fowler*, 10th Dist. Franklin No. 15AP-1111, 2017-Ohio-438, ¶24 (evidence found to be overwhelming where it included eyewitness identifications). As a practical matter, the resolution of the case turned on the issue of credibility. *See State v. Dingus*, 10th Dist. Franklin No. 95APA07-835, 1995 WL 767930, *2 (Dec. 26, 1995). Either the jury believed Officer Krieger that he saw Mr. Thompson drop a bag of crack cocaine or it did not. *See id.* Although Mr. Thompson attempted to cast doubt on Officer Krieger's credibility, he has presented no evidence permitting an inference that the Ravenna police engaged in illegal conduct.

32

{¶143} The majority opinion finds a "danger of unfair prejudice" under Evid.R. 403(A). However, this relates to whether the testimony was inadmissible. Such a finding is not equivalent to a finding of plain error, which requires a "reasonable *probability* that the error resulted in prejudice." (Emphasis sic.) *See Tench* at ¶218. Courts may not simply assume the existence of prejudice but must require the defendant to affirmatively establish prejudice. *State v. Jarrell*, 4th Dist. No. 15CA8, 2017-Ohio-520, ¶50. The majority opinion does not reflect analysis of this issue. I would find that Mr. Thompson has not affirmatively demonstrated how the outcome of the trial would have been different without Officer Krieger's statements.

{¶144} Based on the foregoing, I would find no reversible error with respect to Officer Krieger's recitations of Mr. Thompson's own statement and find Mr. Thompson's second assignment of error to be without merit.

## Ineffective Assistance of Counsel

{¶145} In his fourth assignment of error, Mr. Thompson argues that he was denied effective assistance of counsel.

### *Standard of Review*

{¶146} To establish a claim of ineffective assistance of counsel, Mr. Thompson must demonstrate (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability, were it not for counsel's errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 669 (1984).

33

### *Defense Counsel Error*

{¶147} A threshold issue in a claim of ineffective assistance of counsel is whether there was actual error on the part of trial counsel. *State v. McCaleb*, 11th Dist. Lake No. 2002-L-157, 2004-Ohio-5940, ¶92. In Ohio, every properly licensed attorney is presumed to be competent, and therefore a defendant bears the burden of proof. *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989).

{¶148} Mr. Thompson argues defense counsel erred by (1) eliciting "damaging" testimony from Detective Francis regarding another case involving Mr. Thompson, (2) eliciting testimony from Officer Krieger referencing Mr. Thompson's possible involvement in an alleged assault, (3) failing to object to Officer Krieger's testimony referencing the allegation that Mr. Thompson offered drugs to a juvenile, and (4) failing to request a limiting instruction regarding Officer Krieger's testimony.

{¶149} As explained above, I believe the challenged actions constituted defense counsel's trial tactics to advance his trial strategy. Debatable trial tactics generally do not constitute ineffective assistance of counsel. *State v. Phillips*, 74 Ohio St.3d 72, 85 (1995). Thus, a finding of invited error necessarily decides the question of whether counsel performed ineffectively. *See Doss*, *supra*, at ¶9. As the Eighth District noted in *Doss*, "[t]here is no point in having a stringent invited error doctrine only to allow it to be overcome by finding counsel ineffective for having invited the error." *Id.*

34

### *Prejudice*

{¶150} Even if defense counsel committed error, Mr. Thompson was required to demonstrate a reasonable probability that the error resulted in prejudice — the same deferential standard for reviewing plain error. *See State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶22. Where trial counsel's failure to object does not result in plain error, the issue cannot be reversed by claiming ineffective assistance of counsel. (Citations omitted.) *See Jarrell* at ¶52. Since, in my view, Mr. Thompson cannot establish plain error, he cannot establish ineffective assistance of counsel based on the same issue.

{¶151} Thus, I would find Mr. Thompson's fourth assignment of error to be without merit.

## Manifest Weight of the Evidence

{¶152} In his first assignment of error, Mr. Thompson argues his conviction was against the manifest weight of the evidence.

### *Standard of Review*

{¶153} A manifest weight challenge questions whether the state has met its burden of persuasion. *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997) (Cook, J., concurring). In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's? *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶25.

{¶154} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case

35

in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶155} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Wilson* at ¶25, citing *Thompkins* at 387.

### Officer Krieger's Testimony

{¶156} Mr. Thompson argues that Officer Krieger's testimony was not credible. Based on his testimony, Mr. Thompson either "went to enter a police station twice with crack cocaine in his pants" or "grabbed the crack from his car before attempting to head back in the second time." As Mr. Thompson candidly admits, "[a] police station, full of officers, with security and perhaps even drug-sniffing dogs, is one of the worst places a person can attempt to take illegal narcotics." Mr. Thompson further claims that Officer Krieger's story does not "make sense" because he let Mr. Thompson "go free" rather than arresting him for a felony drug offense.

{¶157} Officer Krieger testified that he saw a clear plastic bag fall to the ground from Mr. Thompson's pocket while Mr. Thompson was approaching an entrance to the police department. While this certainly qualifies as unusual behavior, it does not automatically mean Officer Krieger's testimony is incredible.

{¶158} Officer Krieger further testified that although he suspected the substance within the bag was cocaine, he chose to obtain confirmation from BCI before making an arrest regarding such a small amount. He explained that this practice was consistent with a directive from the prosecutor's office.

36

{¶159} It appears the jury believed Officer Krieger's alleged eyewitness testimony and his explanation for not immediately arresting Mr. Thompson. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. A jury is free to believe all, some, or none of the testimony of each witness appearing before it. *State v. Fetty*, 11th Dist. Portage No. 2011-P-0091, 2012-Ohio-6127, ¶58.

{¶160} Further, "a prerequisite for any reversal on manifest-weight grounds is conflicting evidence[.]" *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, ¶20. Mr. Thompson cites no evidence that contradicts Officer Krieger's alleged eyewitness account. *See State v. Staten*, 10th Dist. Franklin No. 18AP-48, 2018-Ohio-4681, ¶16 (conviction not against manifest weight of the evidence where defendant cited no evidence to conflict with the witness's account of events).

### Chain of Custody

{¶161} Mr. Thompson also argues the state's handling of the physical evidence in the case reduced its evidentiary weight.

{¶162} Any breaks in the chain of custody go to the weight of the evidence and not to the admissibility of the evidence. (Citations omitted.) *State v. Harold*, 11th Dist. Portage No. 2014-P-0012, 2015-Ohio-954, ¶37. Since the majority correctly found no break in the chain of custody with respect to the evidence Officer Krieger collected from Mr. Thompson, I would find there is no basis to reduce its evidentiary weight.

### Weight Discrepancy

{¶163} Mr. Thompson also claims there was a discrepancy regarding the weight of the crack cocaine before and after testing. Officer Krieger and Ms. Miller testified as to

different weights, i.e., 0.26 grams versus 0.17 grams, respectively. However, the record shows they weighed different things. Officer Krieger testified that he weighed the substance while it was inside the clear plastic bag, while Ms. Miller testified that she weighed only the substance.

{¶164} Based on the foregoing, I would find the jury did not lose its way or create a manifest miscarriage of justice by finding Mr. Thompson guilty of possession of cocaine.

{¶165} Thus, I would find Mr. Thompson's first assignment of error to be without merit.

**Sentence**

{¶166} In his fifth assignment of error, Mr. Thompson argues that his sentence is contrary to law. Specifically, Mr. Thompson argues that the trial court did not consider or give proper weight to the relevant sentencing factors when imposing a "12-month (suspended) prison term and a four-year term of community control."

***Standard of Review***

{¶167} The standard of review for felony sentences is governed by R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶16. That provision states:

{¶168} "The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

{¶169} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard of review is not

38

whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

{¶170} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

{¶171} "(b) That the sentence is otherwise contrary to law."

{¶172} Since Mr. Thompson did not object to his sentence in the trial court, "our review is limited to consideration of whether the trial court committed plain error." *State v. Moore*, 11th Dist. Trumbull No. 2015-T-0072, 2017-Ohio-7024, ¶45.

### *Duration of Sentence*

{¶173} Mr. Thompson argues his sentence is contrary to law. A sentence is contrary to law if (1) it falls outside the statutory range for the particular degree of offense, or (2) the trial court failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors in R.C. 2929.12. *State v. Cook*, 11th Dist. Geauga No. 2016-G-0096, 2018-Ohio-788, ¶21.

{¶174} Mr. Thompson concedes that his sentence was within the relevant statutory range for a felony of the fifth degree; however, he mistakenly claims he was sentenced to 12 months in prison.

{¶175} The trial court did not sentence Mr. Thompson to a prison term. Rather, the trial court sentenced him to 12 months of intensive supervision by the adult probation department followed by 36 months of general supervision. The trial court did notify Mr. Thompson that if he violated the terms of his community control sanctions, he may receive

more restrictive community control sanctions or will serve a specific prison term of 12 months.

{¶176} A trial court sentencing an offender to a community control sanction must, at the time of the sentencing, notify the offender of the specific prison term that may be imposed for a violation of the conditions of the sanction, as a prerequisite to imposing a prison term on the offender for a subsequent violation. *State v. Brooks*, 103 Ohio St.3d 134, 2004-Ohio-4746, ¶29. When a defendant is sentenced to community control on a count of conviction and notified at that time of the specific prison term he or she faces should he or she violate his community control, the defendant is only sentenced to community control sanctions and is not sentenced to that prison term. *State v. Duncan*, 12th Dist. Butler Nos. CA2015-05-086 & CA2015-06-108, 2016-Ohio-5559, ¶21.

{¶177} Mr. Thompson's sentence of 48-months of community control sanctions is within the statutory limit. R.C. 2929.15(A)(1) provides "[t]he duration of all community control sanctions imposed upon an offender under this division shall not exceed five years." Since the duration of Mr. Thompson's community control sanctions do not exceed the five-year period, his sentence is not contrary to law. *See State v. Bedell*, 11th Dist. Portage No. 2008-P-0044, 2009-Ohio-6031, ¶17.

### *Sentencing Purposes/Factors*

{¶178} Mr. Thompson claims the trial court did not properly consider the purposes and principles of felony sentencing under R.C. 2929.11 and the factors set forth in R.C. 2929.12.

{¶179} R.C. 2929.11 and R.C. 2929.12 apply as a general guide for every sentencing. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, ¶36. R.C. 2929.11(A)

40

states that the court "shall be guided by the overriding purposes of felony sentencing." To "achieve those purposes," the court "shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." R.C. 2929.11(A). The trial court satisfies its obligation to consider the statutory principles by stating it considered them. *State v. Dawson*, 11th Dist. Lake No. 2015-L-109, 2016-Ohio-2800, ¶15.

{¶180} In this case, the trial court expressly stated in its sentencing entry that it "considered the purpose[s] of felony sentencing which is to protect the public from future crime by the defendant and to punish the defendant using the minimum sanctions that the Court determines to accomplish those purposes without imposing an unnecessary burden on state or local government resources" and that it "considered the need for incapacitating the defendant, deterring the defendant and others from future crimes, rehabilitating the defendant, making restitution to the victim of the offense, the public or both." This language closely follows R.C. 2929.11. The trial court also found that "either a community control sanction or a combination of community control sanctions is consistent with the purpose[s] and principles of sentencing set forth in R.C. §2929.11."

{¶181} The trial court did not expressly state on the record or in its sentencing entry that it considered the factors set forth in R.C. 2929.12. However, the Supreme Court of Ohio has held "[a] silent record raises the presumption that a trial court considered the factors contained in R.C. 2929.12." *State v. Adams*, 37 Ohio St.3d 295 (1988), paragraph three of the syllabus. *See State v. Rattay*, 11th Dist. Lake No. 13-048, 1988 WL 124492, *3 (Nov. 18, 1988). The defendant has the burden of coming forward with evidence to

rebut the presumption that the trial court considered R.C. 2929.12. *State v. Bernadine*, 11th Dist. Portage No. 2010-P-0056, 2011-Ohio-4023, ¶36.

{¶182} The record supports the inference that the trial court considered the factors in R.C. 2929.12. The trial court stated in its sentencing entry that it considered the evidence presented by counsel, oral statements, the presentence investigation report, and Mr. Thompson's statement in reaching its decision. *See id.* at ¶37. The trial court stated at the sentencing hearing that it found Mr. Thompson "amenable to community control sanctions" and that Mr. Thompson needed the "structure" that such sanctions provide. Mr. Thompson has not come forward with any evidence to rebut the presumption that the trial court considered the statutory factors in R.C. 2929.12. *See id.* at ¶38.

{¶183} Mr. Thompson argues that since he spent six months in jail awaiting trial, the "appropriate sentence" would have been time served.

{¶184} The trial court is not required to give any particular weight or emphasis to a given set of circumstances when considering the statutory factors. *State v. DelManzo*, 11th Dist. Lake No. 2007-L-218, 2008-Ohio-5856, ¶23. Simply because the trial court did not find the factors identified by Mr. Thompson to militate in favor of a less severe sentence does not imply the sentence is contrary to law. *See State v. Miller*, 11th Dist. Lake No. 2018-L-133, 2019-Ohio-2290, ¶25.

{¶185} Thus, I would find Mr. Thompson's fifth assignment of error to be without merit.

### Post-Release Control Notifications

{¶186} In his sixth and final assignment of error, Mr. Thompson argues that the trial court erred by not advising him about post-release control at the sentencing hearing.

42

Since Mr. Thompson did not object to the trial court's failure to provide post-release control notifications, he has waived all but plain error. *State v. Perkins*, 11th Dist. Portage No. 2018-P-0089, 2019-Ohio-3993, ¶19.

{¶187} Mr. Thompson claims he was sentenced to a "12-month (suspended) prison term and a four-year term of community control." This is not accurate.

{¶188} Community control sanctions and prison terms are mutually exclusive and cannot be imposed at the same time on the same count of conviction. *State v. Berry*, 3d Dist. Defiance No. 4-12-04, 2012-Ohio-4660, ¶21. Thus, a sentencing court cannot suspend a prison term or make community control a condition of a suspended prison term. *Duncan* at ¶19.

{¶189} As demonstrated above, Mr. Thompson was sentenced to community control sanctions. The post-release control statute does not apply when the trial court does not sentence an offender to a prison term. *State v. Tyler*, 9th Dist. Summit No. 29256, 2019-Ohio-2613, ¶6. Further, a trial court is not required to inform a defendant placed on community control that the possible prison term may include post-release control. *See State v. Brown*, 8th Dist. Cuyahoga No. 77875, 2001 WL 280175, *3 (Mar. 22, 2001).

{¶190} Since the trial court was not required to provide Mr. Thompson with post-release control notifications, I would find Mr. Thompson's sixth assignment of error to be without merit. Therefore, I would affirm the judgment of the trial court.

{¶191} Based on the foregoing, I respectfully concur in part and dissent in part.